215 So.2d 336 (1968)
ROYAL AMERICAN REALTY, INC., a Florida Corporation, Appellant,
v.
BANK OF PALM BEACH AND TRUST COMPANY, a Florida Banking Institution, As Executor of the Estate of Harry Fine, Deceased; William Heller, Abe Lee Cohen, Bernard Rosenberg, Louis D. Cohen, Jerome L. Stern et al., Appellees.
No. 1647.
District Court of Appeal of Florida. Fourth District.
November 4, 1968.
Wallis E. Schulle, of Fisher, Prior, Pruitt & Schulle, West Palm Beach, for appellant.
Phil D. O'Connell and F. Martin Perry, of O'Connell & Cooper, West Palm Beach, and Liebovit & Lewis, Palm Beach, for appellees.
OWEN, Judge.
The trial court, called upon to construe a written brokerage agreement found it to be clear and unambiguous and thus not subject to being modified or altered by parol evidence, and entered judgment adverse to the broker, who brings this appeal.
The agreement in this case took the form of a letter from the sellers to the broker *337 purporting to outline the basis of the brokerage commission which would be paid in connection with a certain transaction which the broker had negotiated. A binder only had been paid at the time the brokerage agreement was signed by the sellers and accepted by the broker. All parties agree that the dispute arises out of the proper construction to be placed upon paragraph 4 of the agreement reading as follows:
"4. Therefore, if the transaction of sale and purchase is closed, and the total cash portion of the purchase price is paid by the Buyer to the Sellers and thereafter the Buyer effects payment on January 2, 1957, to the Sellers of $420,750.00, or within thirty (30) days from January 2, 1957, then the Sellers will pay unto the broker the sum of $100,000.00; and thereafter as the Sellers are paid the principal payments required under the promissory notes, the Sellers will be obligated to pay the broker an amount of brokerage equal to 37% of the amounts paid by the Buyer on said promissory notes to the Sellers, and when the Sellers have effected the payment of $567,500.00 unto the broker, at the dates and in the manner hereinabove provided, then the Sellers will be relieved and released from paying the broker any further sums, the broker agreeing with the Sellers that its right to receive the contingent payments, as above set forth, is limited to the sum of $567,500.00, which said sum will include the $100,000.00 contingent payment above provided for."
Appellant maintained that the total brokerage to be received was the sum of $567,500.00 and that the formula providing for 37% of the amounts paid on the promissory notes, when read in conjunction with the remainder of the agreement, merely established the amount of brokerage which would be considered "earned" should the buyer at anytime default in making payment on the promissory notes. Appellees, with equal persuasiveness, insisted that the total brokerage was the sum of $100,000.00 paid in January, 1957, plus 37% of the principal amount of all payments subsequently made on the promissory notes, but not to exceed $567,500.00 in the aggregate. The difficulty arose when the final payment on the note was collected in the amount of approximately $50,000.00, the appellees taking the position that the broker was only entitled to 37% thereof, and the appellant taking the position that it was entitled to $41,868.36, this being the amount which all parties agree would mathematically bring its total brokerage on the transaction to the sum of $567,500.00.
At the non-jury trial the court permitted the broker to introduce evidence establishing that it was the intention of the parties to pay brokerage in the total sum of $567,500.00, such evidence being introduced over the objection made by the appellees that its admission violated the parol evidence rule. Thereafter, the court entered its final judgment finding that the agreement was not ambiguous, but was clear and definite and thus was not subject to being modified or altered by parol evidence. The court held that the appellant was entitled only to 37% of the final payment.
It is a cardinal rule that the construction of all written instruments is a question of law to be determined by the court where the language used is clear, plain, certain, undisputed, unambiguous, unequivocal, and not subject to conflicting inferences.[1] If we found, which we do not, that the language of this agreement met those conditions and we were thus called upon to glean the intention of the parties solely from the language used, we would necessarily conclude that the more reasonable interpretation of the two views advanced is that the broker is entitled to receive the sum of $567,500.00 as the total brokerage. Any other view would make *338 completely meaningless the reference to the figure of $567,500.00 appearing in two places in the quoted portion of paragraph 4 above, as it had to be abundantly clear to the parties at the time of entering into the agreement that a mathematical computation of brokerage on the formula advocated by appellees would have yielded a total brokerage amount of approximately $23,000.00 less than the figure of $567,500.00. The inclusion of this latter figure would thus be pure surplusage. But rules of construction require that no word or part of an agreement is to be treated as a redundancy or surplusage if any meaning, reasonable and consistent with other parts, can be given to it,[2] and where a contract contains apparent inconsistencies they must be given such an interpretation as will reconcile them if possible.[3]
Rhetorically we pose the question of whether the language of this agreement is clear and unambiguous? Interestingly enough, all parties adamantly maintain that it is. Furthermore, all parties insist that the written brokerage agreement is susceptible of only one reasonable interpretation. Understandably, the "only reasonable interpretation" as seen by appellant is materially different from the "only reasonable interpretation" advocated by appellees. Each view is persuasive and while we have heretofore indicated that which we feel is the better view, neither interpretation sought for the language of the written agreement can be said to be unreasonable. It is a paradox, therefore, that the language which all parties assert [and the court found] to be unambiguous can be rendered ambiguous in fact by the different reasonable constructions advocated for it, since it has been held that a contract is ambiguous when it is reasonably or fairly susceptible to different constructions.[4] We find and so hold that the portion of the brokerage agreement providing for payment of brokerage is ambiguous for the reason that it is, in fact, reasonably or fairly susceptible to the different constructions being advocated by the parties.
In the construction of contracts the intention of the parties is to govern.[5] Such intention is ordinarily deduced from the language employed when the same is without ambiguity; however, if the language used does create an ambiguity, then parol evidence is properly admissible, not for the purpose of changing or varying the terms of the written instrument, but to elucidate, explain or clarify the intention of the parties.[6] The trial court admitted parol evidence for that very purpose, but subsequently concluded in entering final judgment, that since the agreement was not ambiguous but clear and definite, such evidence should not be considered by the court in construing the intention of the parties. Having held the agreement to be ambiguous, we find that the trial court properly admitted the parol evidence and that it was error to exclude the same from consideration in reaching a determination as to the intention of the parties.
The record reflects that the only material evidence bearing on the intention of the parties, outside the agreement itself, consisted of certain admissions made by appellees in response to request for admissions of *339 fact, and the testimony of a Mr. Raidle, who was the broker involved in the transaction (appellant having taken over his interest at a subsequent date). Mr. Raidle testified without contradiction or impeachment that it was the intention of the parties at the time of entering into the brokerage agreement that the broker receive a total brokerage of $567,500.00 if the sale was consummated and all payments fully made by the buyer without default. The evidence also established without dispute that when the appellees originally bought the property in 1956 for $2,000,000.00, they became obligated to Mr. Raidle's firm for a commission of $200,000.00, the payment of which was to be deferred until such later date as the property might be resold. It was approximately one year later when Mr. Raidle negotiated a resale of the property on behalf of appellees as sellers, the sale price being then $3,675,000.00. This latter sale resulted in the brokerage agreement involved in the instant case. Thus, it was explained that the original deferred commission of $200,000.00, plus a 10% commission on the resale, was the basis of the gross brokerage figure of $567,500.00 referred to in paragraph 4 of the agreement. This extrinsic evidence does not contradict or vary the terms of paragraph 4 of the agreement, but rather explains the intention of the parties the wording "* * * and when the Sellers have effected the payment of $567,500.00 unto the broker * * *" and the wording "* * * the broker agreeing with the Sellers that its right to receive the contingent payments, as above set forth, is limited to the sum of $567,500.00 * * *" which otherwise, computed solely on the formula basis would have been completely meaningless. Likewise, such parol evidence was entirely consistent with other portion of the brokerage agreement [not quoted in this opinion] whereby provision was made that, in the event of default by the buyer before the sale was consummated, the broker reserved his right to the $200,000.00 deferred commission which was already due, and in addition thereto was to receive a certain part [equal to 10%] of the amount deposited by buyer in the event the sellers elected to retain the same as liquidated damages. When this parol evidence is taken into consideration, as it should have been, the ambiguity is removed and it becomes clear that the parties intended that the broker's commission was to be earned and payable only in accordance with the formula should any default occur over the 10-year period of the installment notes and mortgage, but that upon the buyer making payment of all sums due for the purchase price of the property, the broker would be entitled to brokerage in the aggregate amount of $567,500.00. Since the parties had stipulated before the court that mathematically, the appellant would have to receive the sum of $41,868.36 from the proceeds of the final note payment in order to bring the total brokerage commission on the transaction to the aggregate figure of $567,500.00, the court should have awarded such sum to the appellant rather than to restrict appellant to 37% of the proceeds of the final note payment.
Accordingly, the final judgment is reversed and this cause remanded for entry of judgment in accordance with this opinion.
Reversed and remanded.
CROSS and McCAIN, JJ., concur.
NOTES
[1] Friedman v. Virginia Metal Products Corp., Fla. 1952, 56 So.2d 515; Reliance Insurance Company v. Brickenkamp, Fla. App. 1962, 147 So.2d 200, 91 A.L.R.2d 1290.
[2] Florida East Coast Ry. Co. v. City of Miami, 1918, 76 Fla. 277, 79 So. 682, 1 A.L.R. 303; Peoples Gas System, Inc. v. City Gas Company, Fla.App. 1962, 147 So.2d 334.
[3] Triple E Development Co. v. Floridagold Citrus Corp., Fla. 1951, 51 So.2d 435; Transport Rental Systems, Inc. v. Hertz Corporation, Fla.App. 1961, 129 So.2d 454; 7 Fla.Jur., Contracts, § 91.
[4] Friedman v. Virginia Metal Products Corp., supra, note 1; 17A C.J.S. Contracts § 294.
[5] Triple E Development Co. v. Floridagold Citrus Corp., supra, note 3; Hughes v. Professional Insurance Corporation, Fla.App. 1962, 140 So.2d 340; McDonald v. Connell, Fla.App. 1963, 158 So.2d 780; 7 Fla.Jur., Contracts, § 75.
[6] Friedman v. Virginia Metal Products Corp., supra, note 1.