James W. PARKHILL, an individual, on behalf of himself and all others similarly situated, Plaintiff,

v.

MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Defendant.

No. Civ. 97–515 (DSD/JMM).

United States District Court, D. Minnesota.

March 2, 1998.

Jack L. Chestnut, Karl L. Cambronne, Jeffrey D. Bores, Becky L. Erickson, Chestnut & Brooks, Minneapolis, MN, Barry A. Weprin, Melvyn I. Weiss, Brad N. Friedman, Milberg Weiss Bershad Hynes & Lerach, New York City, San Diego, CA, Andrew S. Friedman, Bonnett, Fairbourn, Friedman & Balint, Phoenis, AZ, Stephen L. Hubbard, Robert W. Biederman, Cantilo, Maisel & Hubbard, Dallas, TX, Ronald R. Parry, Arnzen, Parry & Wentz, Covington, KY, for Plaintiff Parkhill.

Charles H. Johnson, Garrett D. Blanchfield, Jr., Heidi M. Drewes, Johnson & Associates., St Paul, MN, for Plaintiff Semanko.

Mark Reinhardt, Gavin S. Wilkinson, Jonathan S. Drage, Reinhardt & Anderson, St. Paul, MN, for Plaintiff Zeleny.

Wayne S. Moskowitz, Gary J. Haugen, Maslon Edelman Borman & Brand, Minneapolis, MN, Garold M. Felland, The Minnesota Mutual Life Insurance Co., St. Paul, MN, James F. Jorden, Waldemar J. Pflepsen, Jr., Jorden Burt Berenson & Johnson, Washington, DC, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of defendant Minnesota Mutual Life Insurance Company to dismiss, or in the alternative, for summary judgment. Based on a review of the file, record, and proceedings herein, the court grants in part and denies in part defendant's motion.

## BACKGROUND

Plaintiff James W. Parkhill is a citizen and resident of the State of Florida.[1] Defendant Minnesota Mutual is a Minnesota corporation with its principal place of business in Minnesota. Defendant sells many types of whole or other permanent life insurance policies to individuals, groups, and businesses. Affidavit of Richard Lee (Docket No. 35) at ¶ 3. Plaintiff in this action seeks compensatory and equitable relief for defendant's alleged fraudulent conduct and deceptive sales scheme in the marketing and sale of "vanishing premium" policies.[2] Complaint ¶ 2. In essence, plaintiff alleges that defendant "used standardized sales presentations and 'vanishing premium' policy illustrations through which consumers were persuaded that in a given number of years their need to make out-of-pocket premium payments would cease." Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. (Docket No. 30) at 1 (hereafter "Plaintiff's Memorandum"). Plaintiff alleges that defendant knew its representations were not true and that premium obligations would not "vanish" when promised. *Id.* at 1–2.

This is one of many actions brought nationwide against major insurance companies to recover damages allegedly sustained when the companies' promises of "vanishing" premiums failed to materialize. Unlike some other cases, plaintiff here does not allege that the illustrations shown and representations made to him indicated that payments will "vanish" after a certain number of payments. Instead, plaintiff claims that defendant represented that after an initial out-of-pocket payment no future payments would have to be made out-of-pocket. In essence, plaintiff charges that defendant promised out-of-pocket payments would "vanish."

Plaintiff first purchased insurance from defendant in 1949, buying a whole life policy with a face value of $2,500. Affidavit of James W. Parkhill (Docket No. 31) at ¶ 4. Plaintiff purchased a second whole life policy with a face value of $5,008 in 1970. *Id.* at ¶ 5. Plaintiff alleges that in 1986 Terry Russo, a Minnesota Mutual agent, told him that he could purchase a $30,000 Minnesota Mutual policy by using the values in his existing policies. Russo allegedly told plaintiff that he would have to make one out-of-pocket premium payment of $645.50, and thereafter all future premiums would be paid from the dividends and built-up values of his two pre-existing Minnesota Mutual policies and divi-

---

1. Plaintiff styles his complaint as a "Class Action Complaint," and states that he "brings this action individually and as a class action ... on behalf of all persons and entities who purchased whole or other permanent life insurance policies from defendant ... based on a nationwide fraudulent common course of conduct and deceptive sales scheme[.]" Complaint ¶ 1. Plaintiff, however, has not moved for certification of a class. The court will therefore consider only plaintiff's individual allegations and claims in ruling on defendant's motion.

2. A "vanishing premium" policy is one where, after a certain number of premium payments, the policy itself generates sufficient income through dividends and interest to pay any additional premiums due. In other words, premiums paid in the initial years of a policy are supposed to generate sufficient value to pay all future premiums due in later years, so that future premiums, in essence, "vanish." The assumption that premiums will "vanish" depends on, among other factors, mortality experience, expenses, dividends, and associated interest rates. A change in any of these variables can affect the date by which premiums will "vanish."

dends accumulating in the new $30,000 policy. *Id.* at ¶¶ 7–8. Plaintiff signed an application for the policy on January 24, 1986. *See* Application for Insurance, Exhibit 3 to Parkhill Affidavit. Plaintiff gave Russo a check for $645.50. *See Id.* at Exhibit 4. Plaintiff thereafter received Policy No. 1–673–0610,[3] a five-year term "Adjustable Life" policy, which, according to defendant, is designed to allow a policyholder to request changes in premium and face amount as appropriate to the policyholder's circumstances and objectives. Lee Affidavit at ¶ 5.

Plaintiff alleges that in September 1986, he received a premium notice from defendant for $646.54. When plaintiff and his wife spoke to Russo, he allegedly told them to make a notation on the notice that defendant would pay the premium by surrendering $646.50 on the Policy. Russo allegedly told plaintiff to ignore the notice. Parkhill Affidavit at ¶ 13.

In 1988, allegedly based on Russo's representations, plaintiff upgraded his coverage to a $40,000 whole-life plan by surrendering two life insurance policies plaintiff held with another life insurance company.[4] Plaintiff alleges that Russo again told him that he would never have to make any out-of-pocket premium payments. *Id.* at ¶¶ 16–17. Plaintiff asserts that he would not have purchased the $30,000 policy nor increased his coverage to $40,000 if Russo had not represented that there would be no additional out-of-pocket expenses after the initial premium payment. *Id.* ¶ 20.

Plaintiff made no out-of-pocket premium payments from 1988 through 1994, based on the alleged representation of a Minnesota Mutual agent[5] to ignore all premium notices. On July 19, 1994, plaintiff changed the ownership of Policy No. 1–673–0610 from his wife to the James P. Parkhill and Mary Frances Parkhill Trust. Although plaintiff himself has never been the owner of the policy, he was at all times the individual responsible for making premium payments.

In February 1994, plaintiff alleges that he was informed for the first time that unless he started making out-of-pocket premium payments his Minnesota Mutual policy would lapse. He contends that he began making annual out-of-pocket payments of $1,200 to keep his policy in effect. *Id.* at ¶ 25. Defendant complained to the Florida Department of Insurance. In June 1995, however, plaintiff wrote to a Mr. Cummings of the Department of Insurance and thanked him for his efforts. The letter indicates that "I believe my insurance [situation] is solved. The lack of information was the main thing. Now I understand how the policy works." *See* Exhibit 13 to Parkhill Affidavit. According to plaintiff, "[i]n this letter I was only expressing that I now understood what had happened to me. The letter was not written to mean that I was satisfied with my situation." Parkhill Affidavit at ¶ 24.

Plaintiff filed this action in Hennepin County District Court on February 4, 1997, alleging, in general, that defendant's uniform sales presentations promised policies that could be purchased with a single, lump-sum payment or with a stated number of out-of-pocket annual premium payments, after which no additional out-of-pocket payments would be required. Plaintiff asserts that due to defendant's misrepresentations, he and other class members were fraudulently induced to submit applications for insurance and tender premium payments to defendant.

---

**3.** Plaintiff's wife, Mary Parkhill, was the actual owner of Policy No. 1–673–0610. Plaintiff was listed as the named insured under the policy, and was to pay all premiums due. *See* Exhibit 1 to Lee Affidavit, Question 30.

**4.** The facts alleged in the complaint and those asserted by plaintiff in his affidavit are not entirely consistent. For example, the complaint alleges that Russo promised plaintiff "that for an initial payment of several thousand dollars, that Mr. Parkhill could purchase the $30,000 policy with no additional premiums required," and that plaintiff could use his Paul Revere policies "to purchase a Minnesota Mutual ... policy with a face amount of $40,000 for a one-time out-of-pocket payment of $3,791.00." Complaint at ¶ 45. The facts as alleged in plaintiff's affidavit are set forth above. Plaintiff contends that when he read the complaint he "did not recognize that there was some confusion as to the facts alleged in it." Parkhill Affidavit at ¶ 26. The court agrees with plaintiff that these factual discrepancies do not undercut the substance of plaintiff's claims. Plaintiff, however, must amend the complaint to correct any factual inaccuracies.

**5.** Russo apparently left Minnesota Mutual's employ in 1990, and plaintiff's questions thereafter were directed to another agent. Complaint ¶ 47.

Complaint ¶¶ 13–14. Plaintiff pleads thirteen causes of action: (1) fraud; (2) fraudulent inducement; (3) breach of contract; (4) breach of fiduciary duty/constructive fraud; (5) tortious breach of duty to deal with insured in good faith; (6) negligence; (7) negligent misrepresentation; (8) unjust enrichment and imposition of a constructive trust; (9) deceptive trade practices in violation of Minn.Stat. § 325D.43–325D.48; (10) false advertising in violation of Minn.Stat. § 325F.67; (11) consumer fraud in violation of Minn.Stat. § 325F.68–325F.70; (12) declaratory relief; and (13) reformation. Defendant removed this case to federal court on March 6, 1997, and now brings this motion to dismiss, or in the alternative, for summary judgment.

## DISCUSSION[6]

Defendant entitles its motion as a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." Fed.R.Civ.P. 12(b) indicates that

> If, on a motion asserting the defense numbered [12(b)(6)] to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

Defendant has submitted the affidavits of Waldemar J. Pflepsen, Jr., and Richard Lee and attached documentation in support of its motion. In response, plaintiff has submitted his own affidavit, "in the event the Court deems Minnesota Mutual's *motion to be a motion for summary judgment.*" Plaintiff's Memorandum at 2. In its memorandum, recognizing the possibility that the court would construe defendant's motion as one for summary judgment, plaintiff provides the standards to be utilized by the court in deciding both a motion to dismiss under Fed. R.Civ.P. 12(b)(6) and a motion for summary judgment under Fed.R.Civ.P. 56. Because the court has considered the factual material contained in the affidavits of both parties,

and because plaintiff has had the opportunity to respond to the affidavits submitted by defendant, the court will treat defendant's motion as one for summary judgment under Fed.R.Civ.P. 56. *See George v. City of St. Louis,* 26 F.3d 55, 57 (8th Cir.1994) (court properly treated defendant's motion to dismiss as one for summary judgment where defendant's motion was worded in the alternative and plaintiffs themselves submitted to the court matters outside the pleadings).

### a. Standard for Summary Judgment

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set

---

6. The court notes that it has examined the recent decision of the Honorable Richard Kyle of this District in *Force, et al. v. ITT Hartford Life and Annuity Insurance Co.,* —— F.Supp. ——, Civ. No. 97–1619 (RHK/FLN) [1998 WL 181190] (D.Minn. Jan. 26, 1998) (hereafter *"Force"*). That case involved almost identical allegations

brought against a different insurance company, and the parties in that case made many arguments similar to those presented here. Indeed, plaintiffs in that case were represented by the same counsel as plaintiff here. Although that case involved a motion to dismiss under Fed.

forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson,* 477 U.S. at 250–51. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23.

### b. Common law Claims

#### 1. Choice of Law

■ Although defendant is a Minnesota corporation with its principal place of business in this state, plaintiff is a Florida resident and the policy at issue was purchased in Florida. Defendant therefore argues that Florida law applies to plaintiff's common law tort and contract claims. Def.'s Mem. in Supp. of its Mot. to Dismiss, or in the Alternative, Mot. for Summ. J. (Docket No. 34) at 8 n. 5 (hereafter "Defendant's Memorandum"). Plaintiff points out that defendant has not demonstrated any difference between Minnesota and Florida law that would materially alter the outcome of this case, and contends that the court need not make a choice-of-law determination and may look to the law of both interested jurisdictions. Plaintiff's Memorandum at 6 n. 4. The court in *Force* was faced with the same situation, and determined that it would "generally apply Florida substantive law to the Plaintiff's common law claims, but is constrained to do so only when that law differs materially from the substantive law of Minnesota.... To the extent that Minnesota law is consistent with Florida law, the Court may apply either body of substantive law." *Force,* —— F.Supp. at ——–——. *See also Phillips v. Marist Soc. of Washington Province,* 80 F.3d 274, 276 (8th Cir.1996) (finding that when the relevant laws of two different jurisdictions do not differ, the court need not engage in a choice-of-law analysis). The court agrees with the approach taken in *Force,* and will follow it.

R.Civ.P. 12(b)(6), the court finds Judge Kyle's opinion to be highly instructive.

**7.** Plaintiff alleges the agreement between himself and defendant consists of written illustrations

#### 2. Count III (Breach of Contract)

In Count III, plaintiff alleges that after defendant entered into an agreement [7] with plaintiff in which it promised that a single out-of-pocket premium payment at the time of purchase of the policy would generate sufficient value to fund the cost of the policy, defendant breached this agreement by demanding additional out-of-pocket payments. *See* Complaint ¶ 74–79. Defendant proffers two defenses. First, defendant contends that the parol evidence rule and the express language of plaintiff's policy precludes a claim for breach of contract. In addition, defendant argues that plaintiff has waived his right to bring a breach of contract claim. Plaintiff responds that the parol evidence rule does not apply in this case because: (1) defendant's representations do not contradict the policy; (2) the policy is not fully integrated; (3) the policy provisions that defendant relies on are ambiguous; and (4) the parol evidence rule does not operate in the presence of fraud. Not surprisingly, plaintiff also contends that he has not waived his right to seek contract damages.

The plaintiff's policy contains the following integration clause:

> Your policy, or any reissue of it, contains the entire contract between you and us. This includes the initial application and all subsequent applications to reissue your policy.... No change or waiver of any of the provisions of this policy will be valid unless made in writing by us and signed by our president, a vice president, our secretary or an assistant secretary. No agent or other person has the authority to change or waive any provisions of your policy.

Exhibit 7 to Lee Affidavit at 0064.

As generally stated, the parol evidence rule provides that "the terms of a valid written contract or instrument cannot be varied by a verbal agreement or other extrinsic evidence where such agreement was made before or at the time of the instrument in question. The rule inhibits the use of parol

provided by defendant, other uniform written and oral representations made to plaintiff by defendant, and the applications, policies, riders, and other pre-printed forms drafted by defendant. Complaint ¶ 75.

evidence to contradict, vary, defeat, or modify a complete and unambiguous written instrument, or to charge, add to, or subtract from it, or affect its construction." *J.M. Montgomery Roofing Co. v. Fred Howland, Inc.*, 98 So.2d 484, 485–86 (Fla.1957) (quotations and citation omitted). *See also Gutierrez v. Red River Distributing, Inc.*, 523 N.W.2d 907, 908 (Minn.1994) ("The parol evidence rule makes inadmissible evidence concerning discussions prior to or contemporaneous with the execution of a written instrument when that evidence contradicts or varies the terms of the written instrument.") (quotations and citation omitted).

■ As an initial matter, the court finds that defendant's oral representations to plaintiff concerning the "vanish point" do not contradict the language of the policy. The policy calls for annual premium payments, a fact plaintiff does not contest. Instead, plaintiff claims that defendant represented that after an initial out-of-pocket payment all remaining premium payments were to be paid from dividends and the value of his two prior policies. Parkhill Affidavit at ¶ 8. The court agrees with plaintiff that "Minnesota Mutual's representation that Mr. Parkhill would have to make only one premium payment out of pocket neither varies nor contradicts the writing, but is entirely consistent with the Policy itself." Plaintiff's Memorandum at 18–19. While the policy dictates that it "contains the entire contract between you and us," that policy does not indicate the source of premium payments.

■ From the foregoing, it is perhaps axiomatic that the court also finds the policy in question ambiguous as to the source of premium payments. If the language of a contract creates an ambiguity, parol evidence is admissible to explain or clarify the intention of the parties. *Gutierrez*, 523 N.W.2d at 908

("'[W]here a written contract is ambiguous or incomplete, evidence of oral agreements tending to establish the intent of the parties is admissible.'") (quoting *Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 17 (Minn.1982)); *Royal Continental Hotels, Inc. v. Broward Vending, Inc.*, 404 So.2d 782, 783–84 (Fla. Dist.Ct.App.1981), *rev. denied*, Nov. 3, 1981; *Royal Am. Realty, Inc. v. Bank of Palm Beach & Trust Co.*, 215 So.2d 336, 338 (Fla. Dist.Ct.App.1968). The Minnesota Mutual policy at issue here does not address how premiums are to be paid. There is thus an ambiguity in the contract, and parol evidence is admissible to explain the parties' intent.[8]

■ Defendant's argument that plaintiff has waived his right to bring a breach of contract claim also fails. Defendant argues that because any alleged breach occurred in 1986 when the policy requiring periodic premiums was issued, and plaintiff paid premiums that became due in ensuing years, he has waived his breach of contract claim. This argument ignores the fact that the premium payments made by plaintiff were not out-of-pocket, but instead were paid by dividends and the value of existing policies. Plaintiff therefore had no reason to believe that any breach had occurred. Plaintiff's claim did not arise until 1994, when he was required for the first time to make an additional out-of-pocket payment to sustain his policy.[9]

Evidence of defendant's oral representations and illustrations is not barred by the parol evidence rule, and plaintiff has not waived his right to bring a breach of contract claim. Not only is such a claim therefore cognizable, but summary judgment is not warranted given the fact-specific nature of what defendant allegedly promised.

8. Given that the court agrees with plaintiff that the parol evidence at issue does not contradict the writing and that such evidence is needed to resolve an ambiguity in the contract, the court takes no position as to whether the contract is not fully integrated or whether the parol evidence rule operates in the presence of fraud.

9. Because plaintiff alleges that the breach of contract did not occur until 1994, when he was obligated for the first time to pay an additional out-of-pocket premium, the court finds that his

breach of contract claim is not time-barred by the applicable six year statute of limitations. Although defendant contends that the limitations period began to run in 1986 when plaintiff was required to pay additional premiums, this misconstrues plaintiff's argument. Plaintiff does not claim that he was promised no additional premiums would be due; instead, he alleges that he was promised that no additional out-of-pocket premiums would be due. Thus, the limitations period begins to run when defendant required an out-of-pocket payment to maintain the policy.

### 3. Count IV (Breach of Fiduciary Duty)

 Count IV alleges that defendant held a special relationship with plaintiff because defendant's agent held himself out to plaintiff as an expert and confidant, defendant is a mutual company, owned by its policyholders, including plaintiff, and plaintiff had a prior relationship with defendant which defendant abused. Complaint ¶ 81. Plaintiff alleges that defendant owed plaintiff fiduciary duties, "including a duty of good faith and fair dealing, a duty of full disclosure, and a duty of care arising out of its relationship with plaintiff." Complaint ¶ 82. Defendant contends that no fiduciary relationship exists between an insurer or insurance agent and a prospective insured before an insurance contract is formed, and that "[i]t is well-settled that the relationship between insurance companies and their policyholders is arm's length in nature—not fiduciary." Defendant's Memorandum at 16. Instead, argues defendant, the provisions of a life insurance contract govern the rights and duties of the parties, and these provisions impose no extra-contractual duties on the insurer and do not create a fiduciary relationship. *Id.*

Defendant suggests that a *per se* rule exists precluding the existence of a fiduciary relationship between an insurer and its insureds. The court has failed to find caselaw, however, to support such a rule. Indeed, in both Florida and Minnesota the existence of a fiduciary relationship is a question of fact dependent on the circumstances of each individual case. *See Toombs v. Daniels,* 361 N.W.2d 801, 809 (Minn.1985) ("The existence of a fiduciary relationship is a question of fact."); *Murphy v. Country House, Inc.,* 307 Minn. 344, 240 N.W.2d 507, 512 (1976) (same); *Capital Bank v. MVB, Inc.,* 644 So.2d 515, 518 (Fla.Dist.Ct.App.1994), *rev.*

*denied,* 654 So.2d 918 (1995) ("Fiduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties.... Courts have found a fiduciary relation implied in law when 'confidence is reposed by one party and a trust accepted by the other.' ") (citing *Dale v. Jennings,* 90 Fla. 234, 107 So. 175, 179 (1925)). Although an old case, *Dale* best refutes defendant's argument:

> Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation as a fact exists, in which confidence is reposed on one side and there is resulting superiority and influence on the other, and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal.

*Dale,* 107 So. at 179. Indeed, the changing nature of the insurance industry gives new vigor to this fact-specific analysis. As have other courts, this court finds noteworthy Judge Sand's observations in *Dornberger v. Metropolitan Life Ins. Co.,* 961 F.Supp. 506 (S.D.N.Y.1997). There, the court, applying New York law, rejected the argument that no fiduciary relationship exists as a matter of law between an insurer and its insured. *Dornberger,* 961 F.Supp. at 546–47. The court concluded that New York courts would permit a jury to assess the relationship between an insurer and insured to determine if it is one of trust and confidence.[10] *Id.*

Defendant includes in its brief an appendix presenting cases from twenty-three states purportedly holding that no fiduciary relationship exists between an insurer and an insured in the sale of an insurance policy.[11]

---

**10.** Plaintiff points to an illuminating footnote of the *Dornberger* decision:

> A leading treatise states that older decisions which refused to recognize a fiduciary relationship between insured and insurer may now be "out of step with current concepts." 12 John Alan Appleman & Jean Appleman, Insurance Law and Practice § 7004 (1981). The treatise notes that "[p]articularly is this approach outmoded when television advertising repeatedly refers to 'the good hands' of the insurer or how it is 'like a good neighbor',

implying an ability to place trust and reliance upon the broad shoulders of the kindly company." *Id.*

*Dornberger,* 961 F.Supp. at 547 n. 39.

**11.** Defendant's underlying concern seems to be that placing a fiduciary duty on the entire insurance industry would be burdensome and a dramatic change in the law. The court does not intend to impose any such sweeping duty. Instead, the facts of each individual case must be examined.

Notably absent from the list, however, is caselaw from either Minnesota or Florida. While defendant urges the court to extend the "uniform approach in other jurisdictions" to this case, it is not this court's role to fashion such a *per se* rule. Instead, like the court in *Force*, the court will apply the basic law that the existence of a fiduciary relationship is a question of fact.

■ Plaintiff has made allegations that present such a question of fact whether a fiduciary relationship existed in this case. For instance, when Russo sold plaintiff the policy at issue, plaintiff was already a policyholder of Minnesota Mutual. In fact, plaintiff owned two policies, purchased in 1949 and 1970, and a 37 year pre-existing relationship existed between plaintiff and defendant. Because defendant is a mutual life insurance company, it is owned by its policyholders. Thus, defendant may owe its policyholders a heightened duty of trust and confidence. Finally, the relative positions of plaintiff and Russo when Russo presented the policy at issue to plaintiff is to be considered. For these reasons, summary judgment on Count IV must be denied.[12]

### 4. Count V (Tortious Breach of Duty to Deal with Insured in Good Faith)

■ Defendant argues that Count V of the Complaint, entitled "Tortious Breach Of Duty To Deal With Insured In Good Faith," should be barred by Florida's economic loss rule. In the Complaint, plaintiff alleges that

[i]n connection with the Policies of insurance issued to plaintiff and to members of the Class, a duty of good faith and fair dealing existed, and continues to exist, such that Minnesota Mutual was under a duty to do nothing to impair or frustrate the rights of plaintiff and members of the Class to receive the benefits they had been promised.

Complaint ¶ 87. Plaintiff alleges defendant breached this duty of good faith and fair dealing

[b]y misrepresenting the benefits to be received by plaintiff and Class members under the Policies of insurance which Minnesota Mutual issued to plaintiff and class members, and by failing to disclose material facts adversely affecting those benefits[.]

Complaint ¶ 88. Defendant contends that plaintiff is seeking to recover the benefit of his alleged bargain with defendant, and this claim is therefore barred by the economic loss rule. Plaintiff agrees that the claim sounds in contract, contends that the claim is therefore not barred by the economic loss rule, and offers to amend his Complaint to reflect the contractual nature of the claim.

■ Florida's economic loss rule proscribes, absent personal injury or property damage, tort claims for economic damages flowing from a breach of contract. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1238, 1239 (Fla.1996) ("Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract."); *Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc.,* 620 So.2d 1244, 1247 (Fla.1993) ("We again 'hold contract principles more appropriate than tort principles for recovering economic loss without an accompanying physical injury or property damage.'") (citing *Florida Power & Light Co. v. Westinghouse Elec. Corp.,* 510 So.2d 899, 902 (Fla.1987); *AFM Corp. v. Southern Bell Tel. & Tel. Co.,* 515 So.2d 180, 181–82 (Fla.1987)) ("[W]ithout some conduct resulting in personal injury or property dam-

---

12. In certain circumstances, Florida courts apply that state's economic loss rule to claims for breach of fiduciary duty. *See Future Tech Intern., Inc. v. Tae Il Media, Ltd.,* 944 F.Supp. 1538, 1569 (S.D.Fla.1996) (finding no bar to breach of fiduciary duty claim because contract between parties was not the source of the fiduciary duty claim); *McCutcheon v. Kidder, Peabody & Co., Inc.,* 938 F.Supp. 820, 823–24 (S.D.Fla.1996) (barring breach of fiduciary duty claim because claim arose "solely as a result of the existence of a contract between the parties"). A claim is barred by the economic loss rule only if the fiduciary duties at issue arise out of a contract. If duties exist independent of a contract, the claim will not be barred. In this case, plaintiff's claim for breach of fiduciary duty does not arise solely out of the insurance policy at issue. Indeed, plaintiff alleges breach of fiduciary duty before any policy was purchased. Therefore, this claim is not barred by the economic loss rule. As will be clear from the ensuing discussion, however, several of plaintiff's other claims are barred by the economic loss rule.

age, there can be no independent tort flowing from a contractual breach which would justify a tort claim solely for economic losses."). Stated differently, the economic loss rule provides that when an intentional or negligent act constitutes a breach of contract, no tort claim for that act exists unless a personal injury or property damage occurred.

While Count V is entitled "Tortious Breach Of Duty To Deal With Insured In Good Faith," as plaintiff points out both Florida and Minnesota law classify a claim for breach of the duty of good faith and fair dealing as contractual in nature. Plaintiff's Memorandum at 33; *North American Van Lines, Inc. v. Lexington Ins. Co.*, 678 So.2d 1325, 1330 (Fla.Dist.Ct.App.1996) ("In Florida, a bad faith claim is an action ex contractu."); *Radloff v. First American Nat. Bank of St. Cloud, N.A.*, 470 N.W.2d 154, 158 (Minn.Ct. App.1991), *rev. denied,* July 24, 1991 (reiterating that there is no tort cause of action in Minnesota on a theory of breach of duty of good faith or fair dealing). As such, the economic loss rule is inapplicable to this claim.[13] Even if this claim did sound in tort rather than contract, the economic loss rule would not apply, as plaintiff has alleged facts showing that a breach of fiduciary duty may have occurred prior to the time the insurance contract was entered into by the parties.

Although the court is loath to allow amendment of the Complaint, in this case the allegations contained therein fairly put defendant on notice of the nature of plaintiff's claim. Amendment will therefore be allowed. In addition, summary judgment is not appropriate on this claim, as material questions of fact exist whether defendant did indeed breach this implied contractual duty.[14]

**13.** Again, plaintiff's claim is not barred by the statute of limitations because any alleged breach occurred in 1994, when defendant had to make an additional out-of-pocket payment to maintain his policy.

**14.** Defendant also contends that this claim is meritless because plaintiff is alleging breach of the duty of good faith and fair dealing prior to the formation of the contract and the duty to deal with an insured in good faith governs an insurer's conduct only after an insurance contract has been formed. Defendant's Memorandum at 18. Plaintiff, however, already owned two Minnesota

### 5. Counts I (Fraud), II (Fraudulent Inducement), VI (Negligence) and VII (Negligent Misrepresentation)

Defendant raised the economic loss rule as a bar only to Count V of the Complaint. The court, however, notes the rule's potential applicability to Count I (fraud), Count II (fraudulent inducement), Count VI (negligence), and Count VII (negligent misrepresentation). Each of these claims appears tortious in nature; therefore, the court will examine the preclusive effect of the economic loss rule on each.

#### A. Count I (Fraud)

Count I of the complaint is entitled "Fraud," and alleges that defendant misrepresented that one or several premiums in the initial years of the policy would carry the cost of the policy for the life of the policyholder, that defendant did not disclose material facts when under a duty to do so, and that defendant actively concealed material information from plaintiff. *See* Complaint ¶¶ 58–63. The gravamen of plaintiff's allegations is that defendant promised a "vanishing premium," and when this became infeasible due to changes in market conditions, defendant concealed this information from plaintiff.

The court finds that plaintiff's allegation of fraud is a tort claim for economic damages flowing from the same operative facts that constitute a claim for breach of contract. Plaintiff claims that he bargained for an insurance policy that involved no out-of-pocket costs after an initial payment. While plaintiff alleges plaintiff's misrepresentations and omissions constitute fraud, they also could constitute activity in breach of contract. Because plaintiff does not allege any property damage or personal injury, his claim is barred by Florida's economic loss rule.[15]

Mutual policies at the time of the alleged breach, and he has also alleged post-formation misconduct. *See, e.g.,* Complaint ¶ 38.

**15.** Defendant argues that Count I (Fraud), Count II (Fraudulent Inducement), Count IV (Breach of Fiduciary Duty/Constructive Fraud), and Count VII (Negligent Misrepresentation) all fail because plaintiff cannot demonstrate reasonable reliance on defendant's representations and the policy was ratified by plaintiff's later actions. The court need not consider defendant's arguments on these claims because they are all barred by the economic loss rule.

### B. Count II (Fraudulent Inducement)

██ Count II of the Complaint is entitled "Fraudulent Inducement," and alleges that Minnesota Mutual fraudulently induced plaintiff and Class members to purchase Minnesota Mutual Policies by misrepresenting the "vanishing premium" and replacement products it sold. The sales techniques, presentations and Policy illustrations used by Minnesota Mutual to sell its Policies to plaintiff intentionally omitted and concealed material facts and misrepresented the essential nature and material risks of the Policies being purchased[.]

Complaint ¶ 67. Florida's economic loss rule "has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action." *HTP*, 685 So.2d at 1239. The court in *HTP* noted that "[f]raudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract. It normally 'occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract.'" *Id.* (citing *Woodson v. Martin*, 663 So.2d 1327, 1331 (Fla.Dist.Ct.App.1995)).

██ A recent case of the Florida Court of Appeals, analyzed by Judge Kyle in *Force*, clarifies the status of fraudulent inducement claims brought in conjunction with claims for breach of contract. In *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So.2d 74 (Fla. Dist.Ct.App.1997), *rev. denied*, 700 So.2d 685 (1997), the court affirmed the lower court's dismissal of a fraudulent inducement claim because of the economic loss rule. There, the court declined to adopt the position that one can always avoid the operation of the economic loss doctrine by merely pleading fraud in the inducement. *Id.* at 77. The court noted that "[a] critical distinction must be made where the alleged fraudulent misrepresentations are inseparably embodied in the parties' subsequent agreement." *Id.* The court concluded that

[i]t makes sense that a truly independent cause of action for fraudulent misrepresentation, where the ability of one party to negotiate fair terms is undermined by the other's fraudulent behavior, is not barred by the economic loss rule. However, where the only alleged misrepresentation concerns the heart of the parties' agreement, simply applying the label of 'fraudulent inducement' to a cause of action will not suffice to subvert the sound policy rationales underlying the economic loss doctrine.

*Id.* Based upon its reading of the cases, the court agrees with Judge Kyle's finding in *Force* that "Florida courts have not adopted a *per se* rule regarding whether the economic loss rule applies to claims of fraudulent inducement; rather, such a determination depends on the specifics of each case." *Force*, —— F.Supp. at ——.

The court in *Force* was dealing with a motion to dismiss under Fed.R.Civ.P. 12(b)(6). The court found that

dismissal of the Plaintiffs' fraudulent inducement claim at this stage of the proceedings would be inappropriate. Whether their claim for fraudulent inducement is 'interwoven and indistinct from the heart of the contractual agreement,' *Key Largo*, 694 So.2d at 78, and therefore barred, is a matter that does not lend itself to resolution on a Rule 12(b)(6) motion to dismiss. Specifically, [defendant] has not shown that, under any set of facts consistent with the pleadings, the plaintiffs would be unable to show that their ability 'to negotiate fair terms and make an informed decision [has been] undermined by [defendant's] fraudulent behavior.' *HTP*, 685 So.2d at 1240, *quoted in Key Largo*, 694 So.2d at 77.

*Force* at —— – ——. Here, the alleged misrepresentations and omissions made by defendant "concern the heart of the parties' agreement." *Hotels of Key Largo*, 694 So.2d at 77. As has already been discussed, plaintiff alleges defendant misrepresented the number of out-of-pocket premium payments that would be required to maintain the policy. As plaintiff himself admits, "I would not have purchased the $30,000.00 policy or increased the coverage to $40,000.00 but for the representation that there would be no additional out-of-pocket expense required after the initial payment." Parkhill Affidavit at ¶ 20. The court finds that the representations made by defendant are at the heart of the dispute over the parties' agreement.

Plaintiff's fraudulent inducement claim is therefore barred.

### C. Count VI (Negligence)

■ Count VI, entitled "Negligence," alleges that defendant owed plaintiff the duty to act with reasonable care in retaining, training, and supervising its agents and that defendant breached this duty by failing to supervise the agents' conduct in selling vanishing premium policies. Plaintiff contends defendant failed to ensure that its agents fully disclosed all material facts and did not misrepresent or omit material facts. *See* Complaint ¶¶ 92–94. This claim is barred by the economic loss rule. Quite simply, any misrepresentations or omissions made by defendant's agents serve as the basis for plaintiff's breach of contract claim.

### D. Count VII (Negligent Misrepresentation)

Finally, Count VII is entitled "Negligent Misrepresentation," and alleges essentially the same misconduct as the fraud allegations contained in Count I. Plaintiff claims defendant falsely misrepresented, through uniform sales presentations and illustrations, that the single prepayment of premiums at the time of purchase of the policy, or the payment of premiums during the initial years of the policy, would be sufficient to carry the entire cost of the policy.[16] Complaint ¶ 97. Plaintiff claims such statements were negligently made by defendant in the course of its business, and defendant failed to exercise reasonable care in obtaining or communicating more accurate information. Complaint ¶ 98. Plaintiff's allegations of fraud and negligent misrepresentation are virtually indistinguishable. For the same reasons his fraud claim is barred by the economic loss rule, so too is plaintiff's negligent misrepresentation claim.

### c. Statutory Claims

In addition to his common law claims, plaintiff brings claims for three statutory violations. Plaintiff alleges that defendant has violated the Minnesota Uniform Deceptive Trade Practices Act, Minn.Stat. §§ 325D.43–325D.48, the Minnesota False Statement in Advertising Act, Minn.Stat. § 325F.67, and the Minnesota Consumer Fraud Act, Minn.Stat. §§ 325F.68–325F.70. The court will consider each allegation in turn.

#### 1. Deceptive Trade Practices

■ Plaintiff alleges in Count IX of the Complaint that defendant violated Minn.Stat. §§ 325D.43–325D.48, the Minnesota Uniform Deceptive Trade Practices Act (hereafter "Trade Act"). Defendant contends that to assert a claim under the Trade Act, a plaintiff must prove a "likelihood of confusion" from the defendant's "passing off" of its goods and services as those of another. Defendant's Memorandum at 19. Defendant argues that in this case plaintiff has not made the requisite Trade Act allegations of "passing off" or "confusion" because "the clear and unambiguous language of plaintiff's Complaint illustrates that he was fully aware all along that the Policy was issued to him by Minnesota Mutual." *Id.* at 20.

The Trade Act provides that

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

(1) passes off goods or services as those of another;

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

. . .

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

. . .

(9) advertises goods or services with intent not to sell them as advertised[.]

---

**16.** Plaintiffs allegations in Count VII seem geared more toward a class action than the facts of his individual case.

Minn.Stat. § 325D.44, subd. 1(1)–(3), (5), (9). Defendant cites three cases for the proposition that to assert a claim under the Trade Act plaintiff must prove a "likelihood of confusion" from the defendant's "passing off" of its goods and services as those of another. *See* Defendant's Memorandum at 19; *CSM Investors, Inc. v. Everest Development, Ltd.,* 840 F.Supp. 1304, 1314 (D.Minn.1994); *Scott v. Mego Intern., Inc.,* 519 F.Supp. 1118, 1137 (D.Minn.1981); *Krueger v. State Farm Fire and Cas. Co.,* 510 N.W.2d 204, 211 (Minn.Ct. App.1993). It is clear from the statutory language that to state a claim under § 325D.44 subd. 1(1), (2), or (3), "passing off" or "confusion" is required. In each of the cases cited by defendant, one of these three sections was at issue. In *Scott* and *CSM Investors,* the plaintiffs alleged confusion of product, while in *Krueger,* the plaintiff alleged that an insurance company had attempted to confuse him regarding which division of its company had insured him.

Here, however, plaintiff makes allegations cognizable under § 325D.44, subd. 1(5) and (9). The plain language of these sections does not have a "passing off" or "confusion" requirement. As noted in *Force:*

> There is nothing in the language of Minn. Stat. § 325D.44, subs. 1(5) or 1(9) that requires a plaintiff to show a likelihood of confusion about the source of goods in question. In fact, the structure of the statute suggests just the opposite: that no such showing is required. The statute specifically lists thirteen separate ways in which a plaintiff can establish a violation, and only three of the thirteen contain an explicit requirement that the defendant cause or create a likelihood of confusion about the product.

*Force,* —— F.Supp. at ——.

██ Defendant further argues that plaintiff's Trade Act claim must be dismissed because defendant's conduct complies with government regulations. Minn.Stat. § 325D.46, subd. 1(1) provides that the Trade Act does not apply to "conduct in compliance with the orders or rules of, or a statute administered by, a federal state, or local governmental agency[.]" Because both Minnesota and Florida comprehensively regulate insurers, defendant argues that the failure of either state to bring claims against it for non-compliance with regulatory statutes shows compliance with the law and nonapplicability of the Trade Act.

Plaintiff, however, has alleged conduct in the complaint which, if proven, constitutes violations of several Minnesota and Florida statutes. For example, the complaint alleges that defendant used illustrations as a vehicle for conveying misleading information. *See* Complaint at ¶ 3, 13, 14, 16, 20, 22, and 24–35. This conduct could violate Minn.Stat. § 72A.12 subd. 2, which provides that "[n]o life insurance company doing business in this state ... shall issue or circulate, or cause to permit to be issued or circulated, any ... illustration ... misrepresenting the terms of any policy issued by it or the benefits or advantages promised thereby...." Simply because neither Minnesota nor Florida have taken action against defendant does not mean that defendant's actions are in compliance with all applicable laws.

Finally, defendant argues that even if plaintiff's Trade Act claim is legally sufficient, plaintiff is not entitled to the money damages he seeks because the Trade Act is excluded from Minn.Stat. § 8.31, subd. 1, Minnesota's "private attorney general" statute. This argument is irrelevant to whether summary judgement should be granted, however, given the other remedies provided in the Trade Act itself:

> Subdivision 1. A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required.
>
> . . .
>
> Subdivision 3. The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state.

Minn.Stat. § 325D.45. Defendant's motion must therefore be denied as to Count IX of the Complaint.

## 2. False Advertising

██ In Count X of the Complaint, plaintiff alleges that the promotional efforts un-

dertaken by defendant contained knowingly untrue, deceptive, and misleading statements concerning its products in violation of Minn. Stat. § 325F.67. Complaint ¶ 111. Minnesota's False Statement in Advertising Act (hereafter "Advertising Act") provides that it is a misdemeanor for a business to make any false or misleading advertisement in conjunction with the sale of merchandise or anything else offered for sale. Minn.Stat. § 325F.76. A specific requirement of the Advertising Act is that the advertisement be "made, published, disseminated, circulated, or placed before the public in this state." *Id.* Defendant contends that the Advertising Act does not apply in this case because it is limited to false statements made, published, disseminated, circulated, or placed before the public in this state, and here plaintiff is alleging that a Minnesota Mutual agent contacted and made false representations to him in Florida.

Plaintiff responds that defendant is a Minnesota corporation, maintains its principal place of business in Minnesota, and the statements about which he complains "were systematically designed, orchestrated, promulgated and disseminated as part of a uniform scheme originating in Minnesota Mutual's home office in Minnesota." Plaintiff's Response at 38. Plaintiff argues that Minnesota, as defendant's principal place of business, has a significant interest in ensuring that defendant's business conforms with the law, and that subjecting defendant to the Advertising Act "is hardly unprecedented, unfair, unjust, or an improper or unforeseeable imposition." *Id.*

The court finds that plaintiff's allegations do not come within the express requirements of the statute. The Advertising Act requires that a false or misleading statement be made in this state, and plaintiff's allegations relate only to statements made to him in Florida.[17] While plaintiff attempts to broaden the scope of the Advertising Act to encompass defendant's statements, the plain language of the statute requires that any statements be made in Minnesota. The court will not judicially

expand the Advertising Act's coverage so as to include plaintiff's claim.

### 3. Consumer Fraud

 In Count XI of the complaint, plaintiff alleges that defendant's acts, practices, misrepresentations and omissions constitute fraud, false pretense, false promise, misrepresentation, deceptive sales practices, and dissemination of misleading information. Complaint ¶ 117–18. Defendant's statements and actions, alleges plaintiff, are in violation of Minnesota's Consumer Fraud Act (hereafter "Fraud Act"), Minn.Stat. § 325F.68–325.70. The Fraud Act provides that

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

Minn.Stat. § 325F.69, Subd. 1. By its express terms, the Fraud Act applies only to the sale of merchandise, defined as "any objects, wares, goods, commodities, intangibles, real estate, loans, or services." *Id.* at § 325F.68, Subd. 2. Defendant argues that because insurance does not fall within the definition of merchandise, the Fraud Act is inapplicable in this case. Plaintiff, on the other hand, argues that insurance should be considered merchandise.

In construing the Fraud Act, Minnesota courts have not yet expressly determined whether insurance is to be considered "merchandise." Each side therefore cites cases in support of its argument that insurance should or should not be included within the Fraud Act's provisions. Defendant cites *Boubelik v. Liberty State Bank*, 553 N.W.2d 393, 403 (Minn.1996), where loan contracts were found not to be "merchandise" under the Fraud Act,[18] and *Wilder v. Aetna Life & Cas. Ins. Co.*, 140 Vt. 16, 433 A.2d 309, 310

---

**17.** The court is aware that if a class is later certified in this case, it could include members to whom statements were made in Minnesota, thus making the Advertising Act applicable to them. At this juncture, however, only plaintiff Parkhill's claims are before the court.

**18.** *Boubelik* was decided before the Minnesota Legislature amended the Fraud Act to expressly include loans within the definition of "merchandise."

(1981), where insurance was held not to be a "good" or "service" within the scope of Vermont's consumer fraud statute, in support of its argument that insurance is not "merchandise."[19] Plaintiff cites *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 728 (Minn.1983), where an investment contract was found to be "merchandise," in support of its argument that insurance should be included. Plaintiff argues that while the court in *Boubelik* found that "[o]ne does not sell money in the usual business sense," one does sell insurance; therefore, insurance is more like an investment contract, found to be a "commodity" for purposes of the Fraud Act. *See Boubelik*, 553 N.W.2d at 403; *Jenson*, 335 N.W.2d at 728; Plaintiff's Memorandum at 39.

The court has examined the cases cited by both parties, and agrees with the reasoning and decision of the court in *Force:*

> While instructive, *Boubelik* does not control the instant case. Unlike money, one does sell insurance in the usual business sense. The Minnesota Supreme Court has held that, because "merchandise" is defined as including both "commodities" and "intangibles," the Act applies to the sale of investment contracts. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 728 (Minn. 1983). The court finds *Jenson* to be more persuasive than *Boubelik* on this issue and, in accord with the majority of other jurisdictions that have considered this issue with regard to similarly situated statutes, holds that the Consumer Fraud Act does apply to the sale of insurance.

*Force*, — F.Supp. at — – —. In so holding, the court notes that "[c]onsumer protection statutes are remedial in nature and are to be liberally construed in favor of protecting consumers." *Boubelik*, 553 N.W.2d at 393 (citing *State by Humphrey v. Alpine Air Products, Inc.*, 490 N.W.2d 888, 892 (Minn.Ct.App.1992), *aff'd*, 500 N.W.2d 788 (Minn.1993)).

▬ Defendant further argues that the Fraud Act does not apply to the sale of insurance because defendant's conduct is governed by specific insurance statutes under which no private right of action exists. Specifically, defendant contends that no private right of action exists under Minn.Stat. Ch. 72A, the Unfair Claims Practices Act (hereafter "Unfair Practices Act"), which regulates trade practices in the insurance industry. Defendant relies on *Morris v. American Family Mut. Ins. Co.*, 386 N.W.2d 233 (Minn.1986), where the Minnesota Supreme Court held that neither the Unfair Practices Act itself nor the Minnesota "private attorney general" statute, Minn.Stat. § 8.31, Subd. 3a, afford a private party a cause of action against an insurer for violations of the Unfair Practices Act. *See* Defendant's Memorandum at 22–23.

Defendant is correct in asserting that no private cause of action exists for violations of the Unfair Practices Act. As plaintiff points out, however, his claim is not brought pursuant to the Unfair Practices Act, but instead under the Fraud Act. *See* Plaintiff's Memorandum at 40. The question thus becomes whether the claim preclusion recognized in *Morris* extends to claims brought under statutes other than the Unfair Practices Act. In *Force*, Judge Kyle faced a similar, if not identical, issue.[20] There, the defendant cited *Morris* "for the proposition that the Minnesota Legislature intended to comprehensively regulate the insurance industry through the Insurance Act and to preclude other causes of action against insurers." *Force*, — F.Supp. at —. Judge Kyle found that *Morris*

> is not as broad as [defendant] asserts, and holds only that no private cause of action exists against an insurer under the Minnesota Unfair Claims Practices Act.... Accordingly, the court rejects [defendant's] argument that the Minnesota Legislature intended, in passing the Insurance Act, to proscribe claims against insurers brought under the ... Consumer Fraud Act.

---

**19.** These are the same two cases relied upon by the defendant in *Force*.

**20.** In *Force*, the defendant argued that *Morris* preempted private causes of action under the Minnesota Deceptive Trade Practices Act, False Statement in Advertising Act, and Consumer Fraud Act. In this case, defendant argued in its

initial memorandum only that a private cause of action under the Consumer Fraud Act is preempted. In its reply, defendant extends its argument to all three statutes. The court's analysis and holding with regard to the Fraud Act is equally applicable to the other statutes, and the court rejects defendant's preemption argument as to all three statutes.

*Id.* The court agrees, and finds that plaintiff's claims under the Fraud Act are not precluded by Minn.Stat.Ch. 72A. The general protections afforded by the Fraud Act are applicable to insurance companies regulated by the Unfair Claims Practices Act.

Because the court finds the definition of "merchandise" contained in the Fraud Act to encompass insurance, and because a private cause of action is not precluded by Minn.Stat. Ch. 72A, plaintiff has stated a claim upon which relief can be granted. Further, summary judgment for defendant on this claim is inappropriate because material questions of fact exist whether defendant violated the Fraud Act's provisions.

### d. Equitable Remedies

Plaintiff has pleaded several equitable causes of action in conjunction with his common law claims. In Count VIII, plaintiff alleges unjust enrichment. In Count XII he seeks declaratory relief. In Count XIII he asked the court to reform the parties' contract. The only argument defendant makes in opposition to any of these claims is that the statute of limitations bars plaintiff's claim for unjust enrichment. As has been noted several times, however, plaintiff's cause of action accrued in 1994 when he was required to make an out-of-pocket payment to maintain his policy. This claim is therefore not time-barred.

At this stage, the court notes simply that claims for equitable and declaratory relief are barred to the same extent that the legal claims for substantive relief on which they are based are barred. The court is not now in a position to decide whether defendant's representations are part of a valid, enforceable contract such that there has been a breach of a contractual term or implied duty. Plaintiff's claims for equitable relief may therefore go forward.

### CONCLUSION

Based on a review of the file, record, and proceedings herein, the court concludes that summary judgment is appropriate on five of plaintiff's claims. Therefore, **IT IS HEREBY ORDERED** that:

1. Plaintiff shall have ten days to amend the complaint as provided in this opinion;

2. Defendant's motion to dismiss, or in the alternative, motion for summary judgment is granted in part and denied in part;

3. Plaintiff's claims for fraud (Count I), fraudulent inducement (Count II), negligence (Count VI), negligent misrepresentation (Count VII), and violations of the Minnesota False Statements in Advertising Act (Count X) are dismissed with prejudice.