789 So.2d 1095 (2001)
Carole MILLER, Appellant,
v.
Sandra Berland KASE, Susan Cernansky and Linda Goldfried, as Co-Personal Representatives of the Estate of George Goldleaf, Appellees.
Nos. 4D99-3046, 4D99-4348, 4D99-4349 and 4D00-359.
District Court of Appeal of Florida, Fourth District.
June 20, 2001.
Rehearing Denied August 20, 2001.
*1096 Stephen Rakusin of Stephen Rakusin, P.A., Fort Lauderdale, for appellant.
Ronald Sales of Law Offices of Ronald Sales, P.A., West Palm Beach, for appellees.
WARNER, C.J.
In a declaratory judgment construing a contract, the trial court applied the doctrine of the last antecedent to ascertain the meaning of the contract language. Because the court's use of the doctrine was erroneous, we reverse the final judgment.
Decedent George Goldleaf executed a revocable trust agreement in 1987 as part of his estate plan. Subsequent thereto, he met appellant, Carole Miller, with whom he began a relationship. In 1993, Goldleaf executed a warranty deed of his condominium to himself as trustee for the trust and gave appellant a life estate in the property. In addition, he signed an amendment to the trust acknowledging appellant's life estate. The amendment also provided that the trust would be responsible for all costs of maintaining the condominium, including the mortgage, taxes, maintenance fees, insurance, repairs, and any necessary upkeep. In June of 1994, Goldleaf and appellant executed an agreement in which they disavowed any interest in each other's estate, except to the extent of the life estate appellant possessed in the condominium. *1097 The agreement included the following provision, which is the subject of controversy in this appeal:
an escrow account shall be established at a bank, the amount of the account being a sum sufficient to pay off any mortgage on the property and to provide the funds necessary to pay the annual property taxes during the lifetime of [appellant]. [Appellant] will be responsible for the condominium maintenance and electric, and all utilities and assessments, if any. This provision shall constitute a valid claim against [Goldleaf]'s estate and/or revocable trust agreement and shall not be subject to amendment or revocation except by the concurrence of both parties hereto.
(Emphasis added). Later, appellant and Goldleaf executed an amendment to the agreement providing that "the escrow account shall also pay the monthly condominium maintenance expenses and homeowner's insurance for the condominium unit."
Goldleaf died in 1996. Because appellant was concerned that Goldleaf's children would not continue to pay the taxes and condominium maintenance fees, she brought this action seeking a declaration that the agreement required the trust to deposit a single sum, which the evidence showed would be between $150,000 and $209,000, to cover these costs for the remainder of her lifetime. Appellees, who are Goldleaf's children and successor trustees, argued that the agreement did not require them to pay a single sum but that they could satisfy the obligation by funding the escrow account with sufficient funds to satisfy the obligations as they come due.
At the trial, appellant offered evidence from the attorney who drafted the agreement. He testified that Goldleaf had said that he wanted to set up the escrow account so that appellant would "be taken care of with all expenses paid for" appellant's lifetime without the possibility of interference by Goldleaf's relatives. While the attorney testified that a sum of money would be deposited into the bank from which monies would be withdrawn to pay the expenses, he also explained that "interest would be earned on that money and make sure there was always enough money necessary to pay those expenses which were uncertain." However, no amount of money for the account was ever discussed.
In its final judgment, the trial court noted that "both parties agree that the language is not ambiguous and that general rules applicable to construction of contract language are sufficient to decide the issue." The court agreed with appellees' construction (that a single sum deposit was not required) for the following reasons: (1) the amount of future taxes, insurance, and monthly maintenance expenses was not ascertainable; (2) the mortality tables, used by appellant's CPA to determine the amount appellant maintained was required to be deposited, was only an estimate and was likely to be inaccurate; (3) appellant's construction would read the words "annual" and "monthly" out of the agreement; and (4) application of the rule of the last antecedent required the escrow account to contain funds sufficient to pay the "annual" property taxes and the "monthly" condominium maintenance expenses during appellant's lifetime. "So long as the escrow account contains funds to pay the expenses as they become due, there is no breach of the June 21, 1994 agreement as modified by the amendment of August 16, 1994."
Construction of a contract is a question of law which an appellate court may consider de novo provided that the language is clear and unambiguous and free of conflicting inferences. See Okeelanta Corp. v. Bygrave, 660 So.2d 743, 747 (Fla. 4th DCA 1995). However, where the contract is susceptible to two different interpretations, *1098 each one of which is reasonably inferred from the terms of the contract, the agreement is ambiguous. See Mariner Cay Prop. Owners Ass'n v. Topside Marina, Inc., 714 So.2d 1130, 1131-32 (Fla. 4th DCA 1998); Vienneau v. Metro. Life Ins. Co., 548 So.2d 856, 859 n. 5 (Fla. 4th DCA 1989). This case, like others that have reached this court, presents the paradox of each side claiming that the contract is clear and unambiguous, but each ascribes a different meaning to the "unambiguous" language of the contract, as acknowledged by the trial court. See, e.g., Mariner Cay, 714 So.2d at 1131; Royal Am. Realty, Inc. v. Bank of Palm Beach & Trust Co., 215 So.2d 336, 338 (Fla. 4th DCA 1968).
The trial court opted for appellees' interpretation by applying a rule of grammatical construction. However, resort to rules of construction is permissible only where the contractual language is ambiguous. Herring v. First S. Ins. Co., 522 So.2d 1066, 1068 (Fla. 1st DCA 1988); Southeastern Fire Ins. Co. v. Lehrman, 443 So.2d 408, 408-09 (Fla. 4th DCA 1984). See also Royal Am. Realty, 215 So.2d at 338. (In the absence of clear and unambiguous language, the court must engage in judicial interpretation. To that end, the court must attempt to ascertain the intention of the parties and may accept parol evidence, not to vary the terms of the contract but to explain ambiguous terms.) In construing a contract, the court should try to place itself in the situation of the parties, including the surrounding circumstances, to determine the meaning and intent of the language used. Underwood v. Underwood, 64 So.2d 281, 288 (Fla.1953)(quoting St. Lucie County Bank & Trust Co. v. Aylin, 94 Fla. 528, 114 So. 438, 441 (1927)). In the instant case, the trial court should not have limited itself to rules of construction to the exclusion of extrinsic evidence regarding the meaning of the language employed.
Moreover, the use of the doctrine of last antecedent, a principle of grammatical construction, was not properly applied in this case, and in any event does not really resolve the ambiguities in the contract's language. The trial court stated:
[W]ith respect to the terms "property taxes" and "condominium maintenance expenses" the words "annual" and "monthly" must be read as dominate [sic] over the term "the lifetime of Carol." Rules of grammatical construction require that a relative or qualifying phrase be construed as applying to the nearest antecedent. Applying this rule of construction the escrow account must contain funds sufficient to pay the "annual" property taxes and the "monthly" condominium maintenance expenses during Carol's lifetime. The account is not required to presently contain funds sufficient to pay all such expenses which may accrue during Carol's life.
(Citations omitted). It is unclear to us from the above what the court considered the qualifying phrase and what it considered the antecedent. In grammatical usage, an antecedent is "[a] noun or noun-equivalent to which a following pronoun refers." Philip Gucker, Essential English Grammar 87 (Dover Publications, Inc. 1966). The dictionary definition includes "the word phrase or clause to which a relative pronoun refers." The American Heritage Dictionary of the English Language 55 (8th ed.1979). Thus, the phrase must qualify or describe the nearest noun or noun phrase. Here, the grammatical phrase is "during the lifetime of Carole." That is an adverbial phrase, and adverbs can only modify verbs or adjectives, not nouns. See Kelly v. State Pers. Bd. of Cal., 31 Cal.App.2d 443, 88 P.2d 264, 267 (1939) (rule cannot be applied to adverbial phrase modifying a verb). Therefore, using rules of grammatical construction, the phrase modifies the entire phrase "to pay *1099 the annual property taxes," which is an adjectival phrase modifying "funds" ("to provide the funds necessary to pay the annual property taxes"). Regardless, we fail to understand how the rule, even when properly applied, resolves any ambiguity in this contract provision.
Appellees point to Rich Electronics, Inc. v. Southern Bell Telephone & Telegraph, 523 So.2d 670 (Fla. 3d DCA 1988), as applying the doctrine to an adverbial phrase. However, that is not the case. The phrase "in failing to maintain proper standards" was an adjectival phrase qualifying "negligence," which is a noun. In the instant case, the entire phrase, "being a sum sufficient ... to provide the funds necessary to pay the annual property taxes during the lifetime of Carole," is an adjectival phrase describing the "amount of the escrow account." While the trial court concluded that a single sum might be inadequate because the exact amount of the property taxes, maintenance expenses, and length of Carole's life were all unknown, the agreement refers to "a" sum, which is singular. It seems to us that the trial court's analysis shows how ambiguous the phrase is. The construction principles used do not shed light on that ambiguity, nor can it be resolved from the contract language itself.
Because the trial court relied on the language of the contract alone in attempting to resolve the meaning of the phrases, the court failed to consider the extrinsic evidence which would shed light on the intent of the parties, based upon the surrounding circumstances in which the parties found themselves at the time the contract was entered into. That evidence includes the parol evidence as well as the other documents, including the trust. These factors may lead in different directions, as the attorney's testimony seems to indicate that a single sum would be deposited, while the trust agreement provisions indicate that the trust would pay the expenses, without ever mentioning the escrow agreement. We therefore reverse and remand this case for such further proceedings as are necessary to determine the meaning and intent of the language from all of the relevant and admissible evidence bearing on the issue.
TAYLOR, J., and LENDERMAN, JOHN C., Associate Judge, concur.