827 So.2d 255 (2001)
BIRWELCO-MONTENAY, INC.; Montenay Power Corp., and Miami-Dade County, Appellants,
v.
INFILCO DEGREMONT, INC., Appellee.
No. 3D00-2598.
District Court of Appeal of Florida, Third District.
October 17, 2001.
Dissenting Opinion on Denial of Rehearing October 16, 2002.
*256 Holland & Knight and James D. Wing and Belinda H. Bacon and Barbara M. Arco, Miami, for appellants.
Akerman, Senterfitt & Eidson and J. Cameron Story, III (Jacksonville), for appellee.
Before LEVY, GREEN and SHEVIN, JJ.
Dissenting Opinion on Denial of Rehearing En Banc October 16, 2002.
SHEVIN, Judge.
Birwelco-Montenay, Inc., Montenay Power Corp., and Miami-Dade County [collectively "appellants"] appeal a final judgment following an order granting Infilco Degremont, Inc.'s motion for summary judgment. We reverse.
Appellants contracted with Infilco to provide a well water treatment system as part of an expansion and retrofit project at the County's Resource Recovery Plant. Infilco's system caused delays thereby causing the County to pay delay damages. Appellants sued Infilco under various theories of recovery, including professional design negligence. Infilco moved for summary judgment asserting that the contract between the parties was for provision of goods, not for services, and hence governed by the Uniform Commercial Code; and that the economic loss rule barred appellants' cause of action. Appellants filed affidavits in opposition to summary judgment asserting that the contract was for services, and that the economic loss rule did not bar the professional design negligence claim. The trial court granted Infilco's summary judgment motion and entered a final judgment in the cause.
"The proper standard of review of a summary judgment is de novo. In order to determine the propriety of a summary judgment, this court must resolve whether there is any `genuine issue as to any material fact' and whether `the moving party is entitled to a judgment as a matter of law.'" Krol v. City of Orlando, 778 So.2d 490, 491-92 (Fla. 5th DCA 2001) (citations omitted). A review of the record demonstrates that there are genuine issues of fact regarding the proper characterization of the contract that preclude summary judgment.
Summary judgment is inappropriate where the contract at issue is susceptible of two interpretations. Dade County School Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999); Miller v. *257 Kase, 789 So.2d 1095 (Fla. 4th DCA 2001); Palazzolo v. Fessler, 680 So.2d 607 (Fla. 2d DCA 1996); Hancock v. Brumer, Cohen, Logan, Kandell & Kaufman, 580 So.2d 782 (Fla. 3d DCA 1991); Langner v. Charles A. Binger, Inc., 503 So.2d 1362 (Fla. 3d DCA 1987). Here, each side argues that the contract is clear and unambiguous, and it should be construed consistent with that side's position. However, "each [side] ascribes a different meaning to the `unambiguous' language of the contract...." Miller, 789 So.2d at 1098. This renders the contract ambiguous; summary judgment is improper.
We note that BMC Indus., Inc. v. Barth Indus., Inc., 160 F.3d 1322, 1331 (11th Cir.1998), cert. denied, 526 U.S. 1132, 119 S.Ct. 1807, 143 L.Ed.2d 1010 (1999), on which the parties rely as dispositive of this matter, states that "[t]he question whether a contract is predominantly for goods or services is generally one of fact." The court can only decide this issue, as a question of law, if there are no genuine issues of material fact concerning the contract's provisions. BMC Indus., Inc. We agree. Where, as here, the parties sharply dispute whether the nature of the contract is one for goods or for services, summary judgment is inappropriate: A jury must determine the nature of the contract.
Accordingly, we hold the trial court erred in entering summary judgment. Thus, the judgment entered based on that ruling is reversed and the cause is remanded for further proceedings.
Reversed and remanded.

On Motion for Rehearing En Banc
PER CURIAM.
The motion for rehearing en banc is denied.
LEVY, GERSTEN, GODERICH, GREEN and SHEVIN, JJ., concur.
COPE, J. (dissenting from denial of rehearing en banc).
The Uniform Commercial Code (UCC) covers specially manufactured goods. The question whether this contract is governed by the UCC is a question of law for the court. The panel's ruling will unsettle UCC law, both from a substantive and procedural standpoint.

I.
Miami-Dade County owns a Resource Recovery Plant which is operated by Montenay Power Corp. As part of a retrofit of the plant, Montenay and an affiliated company, Birwelco-Montenay, Inc. entered into a contract in 1994 with Infilco Degremont, Inc. to design and manufacture equipment for the retrofit. Infilco was to ship the equipment to Miami, where it would be installed by another contractor.
Miami-Dade County, Birwelco-Montenay, Inc. and Montenay Power Corp. (collectively "plaintiffs") sued Infilco, claiming $1.6 million in damages for delay.[1] The plaintiffs alleged that Infilco was guilty of professional negligence. Whether there is a cognizable negligence claim and whether delay damages are recoverable depends on whether the contract is governed by the UCC.
The trial court ruled that the contract is governed by the UCC and entered summary judgment in favor of Infilco. The plaintiffs appealed.
A panel of this court reversed. The UCC applies to transactions in goods, § 672.102, Fla. Stat. (1993), but not services. The panel opinion said that "[t]he question whether a contract is predominantly for goods or services is generally *258 one of fact." Opinion at 3 (quoting BMC Indus., Inc. v. Barth Indus., Inc., 160 F.3d 1322, (11th Cir.1998)). The panel ruled that the "jury must determine the nature of the contract." Opinion at 3. Infilco has requested rehearing en banc.

II.
What law governs this contract is a question of law for the court, not a question for the jury. In the present case, there is a contract with Infilco for specially manufactured goods. There is no dispute regarding the terms of the contract. Thus even under the authority relied on by the panel, the BMC case, the question of whether the UCC applies is a question of law for the court. 160 F.3d at 1331.
As already stated, the UCC applies to "transactions in goods...." § 672.102, Fla. Stat. (1993). Under the UCC, "`Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale...." Id. § 627.105(1) (emphasis added).
The issue now before us is addressed in Anderson on the Uniform Commercial Code as follows:
The fact that the seller makes the goods according to the buyer's specifications does not remove the contract from the classification of a contract for the sale of goods. This is seen from the fact that "goods" are expressly defined to include goods specially made for the buyer.
1A Ronald A. Anderson, Anderson on the Uniform Commercial Code, § 2-105:182, at 744 (1996) (emphasis added; footnote omitted).
The Anderson treatise also explains that under this part of the UCC, the "dominant element" test is not applicable. Id. § 2-105:183, at 745. The treatise explains:
The category of goods specially manufactured by the seller for the buyer could be regarded as a hybrid transaction in which the producer undertakes (1) to render the services necessary for the production of the goods, and (2) to transfer title thereto to the buyer. The situation is thus one in which a hybrid transaction is involved and logically a contract for the sale of specially manufactured goods presents a question of the classification of a hybrid transaction. However, this problem is eliminated by the Code's unqualified declaration that goods include "specially manufactured" goods. It is therefore unnecessary to determine whether the service aspect of the transaction is dominant or is merely incidental. The declaration of the Code places this particular hybrid transaction in the "goods" category regardless of the significance of the service element in the transaction.
Id. (emphasis added).[2]
Respectfully, the panel opinion is in error, as was the federal Eleventh Circuit in *259 BMC, in adopting a "predominant factor" test for this part of the UCC.

III.
In sum, Judge Siegel was entirely correct and the judgment should be affirmed. The contract at issue here was for specially manufactured goods which are, by the plain words of the UCC, "goods" within the meaning of the UCC. We should reject, as erroneous, the "predominant factor" test.
SCHWARTZ, C.J., and JORGENSON and FLETCHER, JJ., concur.
NOTES
[1] Miami-Dade County joined as a plaintiff under certain subrogation rights.
[2] The treatise goes on to say:

Some courts, however, have deemed it desirable to point out that as to the manufacturer of the given specially manufactured goods, the service element was minor. Thus it has been declared that the fact that the seller specially designs the product which he makes for the buyer does not alter the fundamental characteristic of the transaction as a sale of goods, as such services are merely incidental, particularly where there is no separate charge made for the services and one lump purchase price is charged.
From the fact that judicial reference may be made in a particular case to the presence of a dominant sales aspect in order to confirm the classification of the transaction of a sale of goods, it is not to be inferred that the transaction would be held a contract for services if the service aspect were dominant.
Id. § 2-105:183, at 745-46 (footnote omitted).