933 So.2d 623 (2006)
Frances KIRSCH, Appellant,
v.
Brian KIRSCH, Appellee.
No. 4D05-4170.
District Court of Appeal of Florida, Fourth District.
June 28, 2006.
Rehearing Denied August 8, 2006.
*624 Troy W. Klein of Troy W. Klein, P.A., West Palm Beach, for appellant.
Jonathan S. Root of Graner, Root & Heimovics, P.A., Boca Raton, for appellee.
TAYLOR, J.
Frances Kirsch ("the mother") appeals the trial court's order granting the motion *625 of Brian Kirsch ("the father") to select a mental health professional for services pursuant to the parties' mediated timesharing agreement. We conclude that the trial court erred in determining that the mediation agreement unambiguously allows for the substitution of an alternate mental health professional by the court, absent the parties' mutual approval.
Pursuant to the final judgment of dissolution of marriage, the mother was awarded sole parental responsibility of the couple's two minor children. Thereafter, the father sought to modify the judgment, asserting that it was in the best interest of the children to create a timesharing agreement between the parties. The parties reached a mediated agreement regarding timesharing.
The agreement expressly provided that the parties would "stipulate to the recommendations of Canoy Roberson," the children's therapist, regarding reunification of the father with the children. The agreement further provided that the mother would retain sole parental responsibility "until such time as Canoy Roberson recommends in writing that it is in the minor children's best interest for the parties to exercise shared parental responsibility." The only therapist referenced by name in the agreement was Canoy Roberson; however, the agreement did provide that the mother could take the children to an "additional therapist to address concerns other than those being addressed by Canoy Roberson" and that the father would be responsible for half of the uninsured costs of therapy "between the children and Canoy Roberson or any mutually acceptable therapist." The court ratified and incorporated the mediation agreement in its order modifying the final judgment of dissolution.
Sometime after the agreement was made, Canoy Roberson resigned. The husband filed a motion for contempt enforcement and to implement standard visitation schedule, and a motion to select a mental health professional. In his motion for contempt, the father alleged that the mother interfered with Roberson's treatment of the children, thus precipitating her resignation. The court granted in part and denied in part the husband's motion and directed the parties to attempt to select a mutually acceptable therapist. The court provided that if the parties could not select a mutually acceptable therapist, the court would determine whether the mediation agreement allowed it to substitute an alternate therapist. In a subsequent motion to select a mental health professional, the father asserted that the parties were unable to reach an agreement and asked the court to appoint a substitute counselor.
In granting the father's motion, the court stated that it disagreed with the mother's assertion that the mediation agreement "was designed solely to facilitate the exclusive services of Canoy Roberson, as the therapist therein." Instead, the court found, the mediation agreement "has one goal, that of attempting to set forth with substantial direction and specific terms, the re-establishment of a relationship between the Former Husband and the parties' Children, in as safe and appropriate environment as possible, and with the assistance of a trained expert."
The court continued, "Nowhere amongst the very detailed language of the mediation agreement does it expressly state that the involvement of Canoy Roberson is the therapist on which the entirety of the plan hinges." The court found support for this proposition in the portion of the agreement that provided that the father would pay for half of the uninsured cost of the children's therapy with Roberson "or any mutually acceptable therapist." The court further noted that the mother sent the father a *626 letter, following Roberson's resignation, seeking his input for Roberson's "replacement." The court wrote: "Nowhere in that letter which was written the same day that Canoy Roberson fired the parties and declined to provide future services does she say that the parties are no longer able to effectuate the intent of the mediation agreement because the sole therapist they contemplated would no longer help implement the terms thereof."
We review mediation agreements de novo. Rose v. Ditto, 804 So.2d 351, 353 (Fla. 4th DCA 2001). The interpretation of such agreements is subject to contract law principles. See Ballantyne v. Ballantyne, 666 So.2d 957, 958 (Fla. 1st DCA 1996). When the court interprets agreements made in the context of divorce proceedings,
[I]t is fundamental that the court may not remake an agreement between the parties, and if there is any ambiguity, the agreement will be interpreted in accordance with the best interest of the child concerned. In construing a contract, the court should place itself as nearly as possible in the position of the parties when the contract was executed, and should consider the object sought to be accomplished by the agreement.
Id. at 958-59 (quoting Bingemann v. Bingemann, 551 So.2d 1228, 1233 (Fla. 1st DCA 1989) (citations omitted)).
Here, the trial court concluded that
this simple, although detailed agreement has one goal, that of attempting to set forth with substantial direction and specific terms, the re-establishment of a relationship between the Former Husband and the parties' Children, in as safe and appropriate environment as possible, and with the assistance of a trained expert. Indeed, there is no ambiguity in the agreement.
We do not find that the agreement was unambiguous. Instead, we find that the agreement contains a latent ambiguity because it does not address the eventuality of Roberson's unavailability. "`A latent ambiguity is said to exist where a contract fails to specify the rights or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings.'" Albertson v. Albertson, 566 So.2d 606, 608 (Fla. 4th DCA 1990) (quoting Forest Hills Utils., Inc. v. Pasco County, 536 So.2d 1117, 1119 (Fla. 2d DCA 1988)).
Where there is a latent ambiguity, the court may consider parol evidence, including "evidence as to the interpretation which the parties may appear to have placed thereon by their actions and the manner of their dealings thereunder." Ace Elec. Supply Co. v. Terra Nova Elec., Inc., 288 So.2d 544, 547-48 (Fla. 1st DCA 1973). In this case, even though the court found the agreement to be unambiguous, it considered parol evidence in the form of a letter sent from the mother to the father on the date of Roberson's resignation to be evidence of the parties' intent that the agreement would continue if Roberson was unavailable. The letter stated:
Effective 4/23/05 the Children's Counselor has resigned from the responsibility of providing services for the Children.
Before making a decision on a replacement, I would appreciate input and for suggestions.
Please advise at your earliest convenience.
Given this extrinsic evidence, we would uphold the trial court's interpretation of the contract if it were supported by competent substantial evidence. Dinallo v. Gunster, Yoakley, Valdes-Fauli & Stewart, P.A., 768 So.2d 468, 471 (Fla. 4th DCA 2000). But we cannot find that the mother's *627 letter provides competent substantial evidence that the agreement was to continue without Roberson. The letter does not specify which services the mother sought to replace  therapy alone or both therapy and recommendations. The Ballantyne court cautioned that if an agreement is ambiguous, then it must be "interpreted in accordance with the best interest of the child concerned." Ballantyne, 666 So.2d at 958-59 (quoting Bingemann, 551 So.2d at 1233).
Arguably, here, the best interest of the children would be better served by re-designating to the court the power to make binding recommendations regarding reunification. We therefore reverse the order entered below and reassign to the trial court the power to make recommendations and decisions regarding reunification.
Reversed.
GUNTHER and KLEIN, JJ., concur.