984 So.2d 634 (2008)
Franklin M. JONES, Appellant,
v.
Yvonne TREASURE, Appellee.
No. 4D07-1691.
District Court of Appeal of Florida, Fourth District.
June 18, 2008.
*635 Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., and Robert J. Moraitis of Robert J. Moraitis, P.A., Fort Lauderdale, for appellant.
Margaret Villella of Atkinson, Diner, Stone, Mankuta & Ploucha, P.A., Fort Lauderdale, for appellee.
STONE, J.
The former husband (Husband) appeals a qualified domestic relations order (QDRO) entered in a marital dissolution case. Due to a conflict between the terms of the parties' marital settlement agreement and the requirements of Husband's pension plan, the trial court entered an order that deviated significantly from the parties' settlement agreement. We reverse.
In the final judgment of dissolution, the trial court retained jurisdiction to enter contemplated QDROs and to enforce the terms of the final judgment. The final judgment of dissolution of marriage states: "The Court specifically retains jurisdiction to enter such [QDRO] as may be necessary to transfer the Husband's retirement accounts pursuant to the intent of the parties' Agreement. . . ."
The marital settlement agreement requires a division of certain retirement accounts which each of the parties held as a result of their employment with American Airlines. Wife was responsible for obtaining a QDRO for the American Airlines "A" fund. Husband was responsible for preparation of the QDRO for the American Airlines "B" fund and the "Super Saver A-Capital Accumulation" plan.
The disposition of the "A" fund is the subject of this appeal. With respect to that fund, the marital settlement agreement states:
The W shall be entitled to the sum of $576.00 per month payable to the Wife upon H's retirement and H shall retain the balance of the payments from the American Airlines "A" Fund. These monthly payments shall be payable by QDRO and shall cease in accordance with the plan upon the death of the W if permitted by the plan.
Wife filed a motion for entry of a QDRO in accordance with this provision of the marital settlement agreement. She alleged that in 1999, she attempted to obtain the plan administrator's approval of a proposed QDRO in accordance with the exact terms of the marital settlement agreement. The administrator refused to approve the proposed QDRO on the basis that the plan did not permit entry of a QDRO with a provision requiring a specified dollar per month distribution. Rather, the plan requires that a QDRO either assign Wife a percentage of Husband's accrued benefit, *636 or an exact number of units. Wife hired an actuary to determine the percentage of Husband's accrued benefit as of December 31, 1998, that is equivalent to the assigned amount of $576 per month.
Section 6 of the proposed QDRO provided that Wife would receive a specified percentage of Husband's monthly benefit. It further provided that Wife may elect to roll her benefit under the plan into another QDRO retirement plan, or receive a lump sum distribution, or leave the benefit in the plan until distributions were otherwise required to commence under the plan.
Section 7 of the proposed QDRO stated that if Husband died before Wife, and before either party had begun receiving benefits under the plan, then Wife would be designated the "surviving spouse" for purposes of determining surviving spouse benefits. Similarly, section 8 provided that, should Wife die before receiving benefits, her share would be paid to a beneficiary of her choice.
According to counsel, American Airlines would approve only QDROs submitted in accordance with its predetermined form, which contained the various death benefits provisions that Husband rejected. Both counsel had unsuccessfully attempted to have an airline representative testify.
At the hearing, Husband did not object to Wife's monthly benefit being calculated as a percentage rather than a dollar amount. Rather, he argued that other provisions of the proposed QDRO pertaining to a death benefit for Wife and her beneficiaries violated the terms of the marital settlement agreement. He argued that the agreement contemplates that once he retired, Wife would receive a monthly payment until she died or until the plan terminated it. That was all she was to receive. Under the proposed QDRO, upon his retirement, Wife's share of the entire fund would be set aside and become a death benefit to her beneficiary instead of his beneficiary.
Husband also objected to section 6 of the QDRO, which allowed Wife to elect to take a lump sum when Husband retired, since the marital settlement agreement provided that Wife's benefits would terminate upon the death of either of the parties. He proposed that a QDRO should be entered that would simply provide for monthly payments to Wife when he retired. If, he argued, a QDRO could not be entered which conformed to the terms of the agreement, some alternative method should be devised to carry out the intent of the marital settlement agreement.
Wife argues that since the marital settlement agreement called for the monthly payments to be "payable by QDRO," and since the employer would not permit a QDRO without a death benefit, the proposed QDRO was the only option.
In its order, the trial court concluded that the marital settlement agreement requires entry of a QDRO and that the proposed QDRO comports with the intent of the parties' agreement.
As with any contract,
[w]here the terms of a marital settlement agreement are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document. It is only when a term in a marital settlement agreement is ambiguous or unclear that the trial court may consider extrinsic evidence as well as the parties' interpretation of the contract to explain or clarify the language.
Levitt v. Levitt, 699 So.2d 755, 756 (Fla. 4th DCA 1997).
A QDRO relates to a former spouse's alimony or child support rights which entitle that spouse to receive benefits payable under the other spouse's pension *637 plan. A QDRO that fails to conform to dictates of the final judgment of dissolution will be reversed. See, e.g., Blaine v. Blaine, 872 So.2d 383 (Fla. 4th DCA 2004).
Here, it is obvious that the QDRO does not comport with the intent of the parties expressed in the terms of the marital settlement agreement but for the language in the agreement, "if permitted by the plan."
Wife asserts that although the QDRO awards her substantial additional benefits that clearly were not contemplated by the marital settlement agreement, the provisions of the plan are not unusual.
According to Wife, it was the parties' intent "that the division of this asset was to be accomplished by QDRO and that benefits would terminate upon the Wife's death, but only `if permitted by the plan.'" Husband, on the other hand, maintains that the parties intended that the monthly payments were to terminate upon Wife's death, and they would be payable by QDRO only "if permitted by the plan."
Had commas been inserted around the words "and shall cease in accordance with the plan upon death of the wife," then that phrase would be deemed parenthetical and the term "if permitted by the plan" would undisputedly be interpreted as modifying the provision for payment by QDRO as contended by Husband. It is the absence of those commas that supports the trial court's interpretation and results in an outcome in which the tail is wagging the dog. There is no provision in the subject paragraph, or anywhere else in the marital settlement agreement, that Wife would be entitled to any lump sum benefit or that her heirs would be entitled to receive any benefit whatsoever after Wife's death; nor is there any mention in the agreement that if Husband should predecease Wife, either she or her heirs, rather than Husband's heirs, would receive the entire benefit. Yet, that is what the QDRO provides. It is, thus, patently clear that no such benefits were intended by either party. It is, therefore, likely that the "if permitted" language was inserted because the parties did not know whether the plan would permit the payments to Wife as agreed.
We have recognized that where parties have different interpretations of an allegedly "unambiguous" term, summary judgment is improper, and the trier of fact should resolve the issue of what terms mean in the context of the particular contract. Campaniello v. Amici P'ship, 832 So.2d 870, 872 (Fla. 4th DCA 2002).
Here, neither party argued for an evidentiary hearing to the trial court, although the trial court did recognize that such might be in order. It may well be that neither party sought a hearing to determine intent because there is no evidence of such that is not already before the court.
Absent evidence, we are left with a Hobson's choice: either accept Wife's interpretation based on nothing more than the absence of the commas, or direct the trial court to accept that the agreement is incapable of complete performance with regard to using the QDRO, and to enter an order incorporating the otherwise expressed intent of the parties. For example, the choice could include directing Wife to specify Husband or his estate as her primary beneficiary under the QDRO or to otherwise secure Wife's interest in the payments, recognizing that the purpose of a QDRO is to provide security for the obligation.
At the very least, it appears that the subject provision of the marital settlement agreement suffers from a latent ambiguity. As this court held in Kirsch v. Kirsch, 933 So.2d 623, 626 (Fla. 4th DCA 2006), "`[a] latent ambiguity is said to exist where a contract fails to specify the rights *638 or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings.'" Id. (quoting Albertson v. Albertson, 566 So.2d 606 (Fla. 4th DCA 1990)). The agreement lacks any provision dealing with the unresolved issue as to what would happen if the employer would not permit a QDRO carrying out the parties' intention. Cf. Raticoff v. Raticoff, 507 So.2d 798 (Fla. 4th DCA 1987) (concluding parties' agreement became ambiguous by subsequent discovery of additional pension benefits and trial court erred in awarding wife property rights which were not contemplated by the parties at the time of the stipulated property settlement agreement).
In Miller v. Kase, 789 So.2d 1095 (Fla. 4th DCA 2001), the court faced a similar circumstance in which both parties claimed that document language was not ambiguous and each side argued solely for its interpretation. There, as here, the trial court looked only to grammar in interpreting the document. There, we said:
In its final judgment, the trial court noted that "both parties agree that the language is not ambiguous and that general rules applicable to construction of contract language are sufficient to decide the issue."
* * *
Construction of a contract is a question of law which an appellate court may consider de novo provided that the language is clear and unambiguous and free of conflicting inferences. However, where the contract is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract, the agreement is ambiguous. This case, like others that have reached this court, presents the paradox of each side claiming that the contract is clear and unambiguous, but each ascribes a different meaning to the "unambiguous" language of the contract, as acknowledged by the trial court.
* * *
[R]esort to rules of construction is permissible only where the contractual language is ambiguous. (In the absence of clear and unambiguous language, the court must engage in judicial interpretation. To that end, the court must attempt to ascertain the intention of the parties and may accept parol evidence, not to vary the terms of the contract but to explain ambiguous terms.) In construing a contract, the court should try to place itself in the situation of the parties, including the surrounding circumstances, to determine the meaning and intent of the language used. In the instant case, the trial court should not have limited itself to rules of construction to the exclusion of extrinsic evidence regarding the meaning of the language employed.
Moreover, the use of the doctrine of last antecedent, a principle of grammatical construction, was not properly applied in this case, and in any event does not really resolve the ambiguities in the contract's language.
* * *
Regardless, we fail to understand how the rule, even when properly applied, resolves any ambiguity in this contract provision. . . . It seems to us that the trial court's analysis shows how ambiguous the phrase is. The construction principles used do not shed light on that ambiguity, nor can it be resolved from the contract language itself.
Because the trial court relied on the language of the contract alone in attempting to resolve the meaning of the phrases, the court failed to consider the extrinsic evidence which would shed *639 light on the intent of the parties, based upon the surrounding circumstances in which the parties found themselves at the time the contract was entered into. . . . We therefore reverse and remand this case for such further proceedings as are necessary to determine the meaning and intent of the language from all of the relevant and admissible evidence bearing on the issue.
Miller, 789 So.2d at 1097-99.
Here, as in Miller, we reverse and remand for further proceedings to determine the intent of the parties from all relevant admissible evidence, including as it appears from the document, and to enter relief accordingly. In doing so, the court should avoid awarding rights that were not contemplated by either party.
STEVENSON and TAYLOR, JJ., concur.