FARMER, J.
The parties settled their dissolution of marriage case with a marital settlement agreement (MSA) formally approved and incorporated into a final judgment. At the time of their agreement he had suffered from a back injury for several years during which he was unemployed, and had no assets then immediately convertible to cash. His only asset for equitable distribution was the 1100 Douglas Building in *127 New York, titled in his name alone. Their MSA contains the following provisions:
23. DISTRIBUTION OF OTHER REAL PROPERTY. ...
A. The Husband owns the following real property titled solely in Husband’s name....
The Wife in recognition of and exchange for the funds Wife shall receive for equitable distribution under this Agreement waives any right, title or interest she may have by or under the Parties’ marriage to the 1100 Douglas Building and confirms and agrees that the property shall remain the sole property of the Husband.
[[Image here]]
28. DISTRIBUTION TO WIFE: The Wife shall receive from the Husband as and for equitable distribution of all of the Parties Marital Assets the sum of One Hundred and Forty Five Thousand Dollars ($145,000) less the Wife’s debt ... totaling Three Thousand, Seven Hundred and Thirty Six dollars and Twenty Eight cents ($3,736.28) for net payment due to Wife from the Husband in the amount of One Hundred, Forty One Thousand, Two Hundred and Sixty Three Dollars and Seventy Two cents ($141,263.72).[1]
No date of payment was specified in the MSA. The final judgment ordered the parties to comply with the MSA.
A few months after entry of judgment, she filed a motion to enforce the MSA provisions set out above. She argued that payment was to be made upon the entry of judgment. He argued that both understood payment was to come from the proceeds of sale of the 1100 Douglas Building, and that he had extended his best efforts to effect a sale, having promptly listed the building and later significantly reduced the price being sought — from $625,000 to $450,000. The MSA being silent about the intent of the parties as to when payment would be due — and therefore ambiguous— the trial court thought the issue indicated an occasion for extrinsic evidence from the parties as to their mutual intent at the time of contracting about the time of payment.
At that evidentiary hearing, she testified that she assumed she was to receive the equitable distribution payment upon receipt of the Final Judgment. He testified that he had not been gainfully employed for some seven years before the final judgment due to a back injury, that he had no appreciable liquid assets from which he could have paid the equitable distribution payment at the time of the Final Judgment. He noted that she concedes he made full and fair disclosure to her of his finances. He testified that the intent was that the equitable distribution payment would be made upon the sale of the New York property. He explained that the property has been continuously listed for sale and that he has reduced the listing price by $175,000 to promote a sale.
He also pointed out that he had primary residential custody of the four minor children of the marriage. The final judgment required her to pay child support to him. She has made no such payments, he testified, leaving him with the full financial burden of raising the children. Nevertheless he had tried to make some installment payments on the equitable distribution. She admitted that since the final judgment he has paid her $2,500.00 on June 20, 2007, $1,500.00 on August 17, 2007, $10,000.00 on October 13, 2007, $1,000.00 on December 12, 2007 and $500.00 on May 13, 2008.
In announcing her decision to deny the motion at the conclusion of the evidentiary hearing, the trial judge said:
*128 “[t]he agreement, if you look at it, it does identify the property in New York going to the husband. And you could assume that he’s going to sell that. And the evidence is that it’s actively listed. It’s been reduced at a reasonable rate. He has made payments, as you pointed out, all the way into 2008. So he’s not coming in here with unclean hands saying he’s done nothing to try to satisfy the debt.”
Her written order of denial further stated:
“[a]s long as Former Husband has the New York property up for sale with a reasonable asking price and the Former Husband continued to make a good faith effort by paying anything toward Former Wife’s equitable distribution the Former Husband has satisfied the terms and the Final Judgment as written.”
Her argument on appeal is that the court erred in admitting parol evidence, that the court misinterpreted the MSA, and that the court has effectively modified the equitable distribution provision in the MSA. We disagree.
As to the admission of parol evidence about the intent of parties regarding the time for payment, she failed to object to any of the evidence or even to having an evidentiary hearing. Apart from failing to preserve the issue, we also conclude that in any event the evidence was not improper. The MSA failed to specify a time for payment and was thus ambiguous as to the intent of the parties in that regard. A latent ambiguity arises, “where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.” Syverson v. Jones, 10 So.3d 1123, 1125 (Fla. 1st DCA 2009). ‘Where the language of a contract is ambiguous or unclear as to a particular right or duty, the court may receive evidence extrinsic to the contract for the purpose of determining the intent of the parties at the time of the contract.” Gulf Cities Gas Corp. v. Tangelo Park Serv. Co., 253 So.2d 744, 748 (Fla. 4th DCA 1971). Generally, where a contract fails to specify the rights or duties of the parties, “extrinsic evidence is necessary for interpretation” and the court may consider parol evidence. Jones v. Treasure, 984 So.2d 634, 637-38 (Fla. 4th DCA 2008).
The evidence was that both knew he had no cash or income to make such a payment when the MSA was being negotiated. Both knew the New York building was the only source of such funds. Both facts support the trial judge’s finding that the real intent of the parties was that payment would be due from the proceeds of the sale of the New York building. The factual resolution of such an ambiguity as to the due date of the payment does not modify their agreement; it merely clarifies the inherent ambiguity therein.

Affirmed.

LEVINE, J., concurs.
WARNER, J., dissents with opinion.

. These are the complete provisions bearing on the subject.