IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

MID-CONTINENT CASUALTY COMPANY,

      Appellant,

 v.

R.W. JONES CONSTRUCTION, INC.
and CARR LAW FIRM, P.A.,

      Appellees.

Case No. 5D16-2836

_____/

Opinion filed October 20, 2017

Appeal from the Circuit Court
for Orange County,
Donald A. Myers, Jr., Judge.

Derek J. Angell, of O'Connor & O'Connor,
LLC, Winter Park, for Appellant.

Peter F. Carr, Jr., of Carr Law Firm, P.A.,
and Stephen A. Marino, Jr., of Ver Ploeg &
Lumpkin, P.A., Orlando, for Appellee, Carr
Law Firm, P.A.

No Appearance for Appellee, R.W. Jones
Construction, Inc.


WALLIS, J.

      Mid-Continent Casualty Company ("MCC") appeals the trial court's order granting

a motion to enforce a mediated settlement agreement filed by R.W. Jones Construction,

Inc. ("R.W. Jones"), and Carr Law Firm, P.A. ("Carr Law") (collectively, "Appellees").[1] Because the trial court incorrectly found MCC judicially estopped from challenging the amount of Carr Law's fees and that Carr Law timely filed its charging lien, we reverse.

## FACTS

The underlying litigation began in 2008 with Carr Law representing R.W. Jones in a breach of contract case against Glenn and Jo Ann Mueller.[2] R.W. Jones's general commercial liability insurer, MCC, retained Meier, Bonner, Muszynski, O'Dell & Harvey, P.A. ("Meier Bonner"), to defend against the Muellers' counterclaims. A jury returned a verdict for R.W. Jones, and the trial court entered a final judgment of $234,490.26, expressly reserving jurisdiction to determine Appellees' entitlement to recover costs, expenses, and attorneys' fees. Carr Law moved for $415,656 in attorneys' fees and just over $8000 in costs. Meier Bonner also moved for attorneys' fees on MCC's behalf but did not request a specific amount.

In March 2014, Mrs. Mueller filed a notice of Chapter 7 bankruptcy. In July 2014, MCC, Carr Law, and R.W. Jones filed a combined proof of claim for $1,353,422, comprised of: $290,558 as judgment awarded to R.W. Jones; $217,608 for Meier Bonner's fees; $831,312 for Carr Law's fees (including a 2.0 multiplier); and $13,944 for Carr Law's costs. MCC's counsel qualified its agreement to filing the combined proof of claim, reserving the right to challenge the amount of Carr Law's fees and costs, as referenced in the following email to R.W. Jones's counsel:

> Finally, I am okay with you filing the proof of claim in the form and amounts you presented. However, my consent to your

[1] R.W. Jones did not participate on appeal.

[2] Glenn Mueller died in January 2009.

2

filing the POC shall not be construed as acquiescence to, or waiver of any rights that [MCC] may have to dispute, the amount or award of legal fees to [Carr Law], the lodestar multiplier and/or the priority/marshalling/division of the distribution of funds by the bankruptcy estate. Moreover, [MCC] agrees with [R.W. Jones] in that the division of funds should be revisited when we have a better idea of what will be distributed.

MCC, R.W. Jones, and Carr Law agreed to create a Florida Land Trust Agreement (the "Trust"), into which the bankruptcy trustee conveyed title to the home, and which named each party as an equal one-third beneficiary. Regarding distribution of the Trust assets, the agreement provided:

Trustee and Beneficiary agree that all monies received by the sale of the Property shall remain in the Trust Account of [Meier Bonner] until either all parties hereto agree in writing to a disbursement of said monies or a court orders the same. The respective beneficial interests in this Trust shall have no bearing on what amount each Beneficiary is entitled to recover from the sale of the Property.

The parties then participated in bankruptcy mediation, culminating in a mediated settlement agreement (the "Bankruptcy MSA"). The Bankruptcy MSA provided that the combined proof of claim "in the amount of $1,353,442 is deemed an irrevocably allowed claim that will not be objected to by any of the Parties." Mrs. Mueller agreed to dismiss her appeal of the final judgment entered in favor of R.W. Jones. The Bankruptcy MSA further stated that MCC joined the "agreement for the purpose of the foregoing release. Such release does not affect the rights and obligations between [R.W.] Jones and [MCC]."

In December 2015, the parties returned to mediation in state court to determine the distribution of the approximately $800,000 in the trust, received from the sale of the home. Appellees ultimately executed a settlement agreement ("State Court MSA"), whereby R.W. Jones received $265,000, Carr Law received $510,000, and MCC

3

"receive[d] the balance of the escrowed monies." MCC did not sign the State Court MSA or otherwise agree to its terms. Appellees moved to approve the State Court MSA and to distribute the escrowed funds accordingly. MCC moved to intervene to challenge the reasonableness of Carr Law's fees and determine the priority of payments among the parties. After a hearing, the trial court reserved ruling on the issue, affording the parties twenty days to file additional briefs. On the twentieth day, Carr Law filed a notice of charging lien.

In June 2016, the trial court entered an order granting Appellees' motion to approve the State Court MSA. The court explained that the filing of the charging lien perfected Carr Law's "first right of recovery, . . . superior in right to any judgment liens against the recovery." The court further found MCC judicially estopped from challenging Carr Law's fees because it never objected to the Bankruptcy MSA. The trial court ordered distributions of: $265,000 to R.W. Jones; $510,000 to Carr Law; and any remainder to MCC. In its unsuccessful motion for rehearing, MCC challenged the timeliness of the filing of the charging lien, as well as the court's finding that it did not object to the amount of Carr Law's fees. MCC now appeals the trial court's approval of the State Court MSA. We review de novo a trial court's interpretation of a mediated settlement agreement. Silver v. Silver, 992 So. 2d 886, 888 (Fla. 2d DCA 2008) (citing Kirsch v. Kirsch, 933 So. 2d 623, 626 (Fla. 4th DCA 2006)).

## TIMELINESS OF CHARGING LIEN

"The charging lien is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit. It serves to protect the rights of the attorney." Sinclair, Louis, Siegel, Heath, Nussbaum &

4

Zavertnik, P.A. v. Baucom, 428 So. 2d 1383, 1384 (Fla. 1983). "[I]n order to perfect a charging lien an attorney must give his or her client timely notice." Rose v. Marcus, 622 So. 2d 63, 65 (Fla. 3d DCA 1993) (citing Baucom, 428 So. 2d at 1385). More broadly, "[p]rocedural due process requires both fair notice and a real opportunity to be heard." Keys Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth., 795 So. 2d 940, 948 (Fla. 2001). Courts do not evaluate the specific parameters of procedural due process "by fixed rules of law, but rather by the requirements of the particular proceeding." Id. (citing Gilbert v. Homar, 520 U.S. 924 (1997)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Further, a party must have an opportunity to be heard "at a meaningful time and in a meaningful manner." Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

After the March 10, 2016 hearing on Appellees' motion to enforce the State Court MSA, the trial court permitted the parties an additional twenty days to brief the issue of priority. On the last briefing day, March 30, Carr Law filed its notice of charging lien at approximately 5:00 p.m. Three hours later, MCC submitted its brief, which did not address Carr Law's charging lien. Carr Law followed with its supplemental brief at 10:00 p.m. that same night, relying on the charging lien as its primary argument for receiving first priority. MCC first challenged the enforcement of the charging lien in its July 11 motion for rehearing. Carr Law's 5:00 p.m. filing of its notice of charging lien provided, at most, seven hours for MCC to respond before the end of the extended briefing window. This conduct tested the bounds of timely notice and thus deprived MCC of a meaningful opportunity to be heard on the issue. See id. By then relying on the charging lien in its ruling, the trial

5

court denied MCC procedural due process. On remand, we instruct the trial court to provide MCC with adequate notice and opportunity to be heard at a hearing on Carr Law's charging lien, after which the trial court may consider the effect of the lien on the parties' priority. See Rose, 622 So. 2d at 65.

## JUDICIAL ESTOPPEL

"Judicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in separate judicial, including quasi-judicial, proceedings." Blumberg v. USAA Cas. Ins. Co., 790 So. 2d 1061, 1066 (Fla. 2001) (quoting Smith v. Avatar Props., Inc., 714 So. 2d 1103, 1107 (Fla. 5th DCA 1998)). "A situation justifying the application of judicial estoppel 'is more than affront to judicial dignity. For intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" Grau v. Provident Life & Acc. Ins. Co., 899 So. 2d 396, 400 (Fla. 4th DCA 2005) (quoting Scarano v. Cent. R.R. Co. of N.J., 203 F.2d 510, 513 (3d Cir. 1953)).

Here, the record does not support the trial court's conclusion that MCC "agreed not to object to the detailed claim amounts for their respective fees and costs" pursuant to the Bankruptcy MSA. MCC's email exchange with Carr Law demonstrated that, before agreeing to file a combined proof of claim, it did not waive "any rights that [MCC] may have to dispute the amount or award of legal fees to [Carr Law]." The parties' Trust agreement similarly provided that the trustee would not distribute any proceeds "until either all parties hereto agree in writing to a disbursement of said monies or a court orders the same. The respective beneficial interests in this Trust shall have no bearing on what amount each Beneficiary is entitled to recover from the sale of the Property." Moreover,

6

the Bankruptcy MSA provided that MCC joined the agreement "for the purpose of the foregoing release" but that such release did not "affect the rights and obligations between RW Jones and [MCC]." MCC proceeded to challenge the amount of Carr Law's fees both in its motion to intervene in the circuit court action and at the hearing on Appellees' motion to enforce the State Court MSA.

The Bankruptcy MSA did not conclusively determine distribution of the assets; it simply provided that no party would object to the other parties' rights to assert their individual claims. Cf. GMGRSST, Ltd. v. Menotte (In re Air Safety Int'l, L.C.), 336 B.R. 843, 849 (S.D. Fla. 2005) (concerning a settlement agreement providing for distribution of specific percentages to creditors in two separate phases). Under the circumstances of this case, we agree with MCC that agreeing not to challenge another creditor's right to assert a claim does not necessarily constitute a waiver of any challenge to the amount of that creditor's claim. Pursuant to the Trust, the parties had to either agree on the distribution scheme or wait for a court to make the determination for them. Indeed, R.W. Jones and Carr Law did not agree on the amount of their individual distributions until they executed the State Court MSA, which MCC did not join. In other words, the Bankruptcy MSA "reinforced the existing contractual relationships" created by the Trust, but it did not determine each party's distribution. Thus, MCC did not assert "totally inconsistent positions" in the bankruptcy case and the circuit court case. See Blumberg, 790 So. 2d at 1066.

In light of the foregoing, MCC has shown that the trial court erred by finding it judicially estopped from challenging Carr Law's fees. Contrary to the trial court's findings, MCC objected to the amount of Carr Law's fees throughout the proceedings. We reverse

7

and remand for a fee hearing to determine the reasonable amount of Meier Bonner's and Carr Law's fees.

REVERSED and REMANDED with Instructions.

ORFINGER and EDWARDS, JJ., concur.