DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANDREW BOUKZAM,**

Appellant,

v.

**JOSSI JUGO** and **DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT,**

Appellees.

No. 4D19-1240

[March 18, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Gina Hawkins, Judge; L.T. Case No. 062018DR007729AXXXCE.

Dara L. Schottenfeld of David J. Schottenfeld, P.A., Plantation, for appellant.

Ashley Moody, Attorney General, and Toni C. Bernstein, Senior Assistant Attorney General, Tallahassee, for appellee Department of Revenue.

***ON MOTION FOR REHEARING***

TAYLOR, J.

***Introduction***

We grant appellant's motion for rehearing, withdraw our previous decision, and issue the following opinion in its place.

Andrew Boukzam, the father of a minor child, appeals a post-judgment order directing that all child support payments be made through the State of Florida Disbursement Unit. We reverse the order, because the trial court improperly modified the final judgment without finding that the modification was in the best interest of the child, that a substantial change in circumstances had occurred, or that any other valid ground for

modification applied.  However, on remand, the trial court should reconsider whether the final judgment should be set aside under Florida Family Law Rule of Procedure 12.540(b)(1) on the ground that the Department's approval of the final judgment was due to "mistake, inadvertence, surprise, or excusable neglect."

### *Facts and Procedural History*

Following the entry of a final administrative order establishing child support, the father filed a petition to determine paternity.

The Department of Revenue ("the Department") moved to intervene in the paternity action, alleging that the mother was receiving public assistance or was otherwise eligible for Title IV-D services from the Department.  The trial court granted the Department's motion to intervene as a party.

The trial court eventually entered an Agreed Superseding Final Judgment, which incorporated the parents' settlement agreement regarding child support and parenting issues.  Before the final judgment was submitted to the trial court, the Department's counsel agreed via email to the entry of the judgment.

The settlement agreement stated that the father would make child support payments "directly to the MOTHER by direct deposit to such account as she may from time to time designate in writing."

The Department later moved to set aside the final judgment or, in the alternative, for redirection of the child support payments.  In the Department's amended motion, the Department maintained that its previous attorney had mistakenly approved the final judgment with respect to how the support was to be paid.  The Department alleged that the mother was receiving public assistance and had assigned her rights to the Department.  Under Florida law, the Department argued, "the support must be paid through the Support Depository."  The Department thus requested that the final judgment be set aside or "amended to direct the payments to be made through the Support Depository."  However, the Department did not allege that a redirection in payments was in the best interest of the child, that there had been a change in circumstances, or that a default in payment had occurred.

At the hearing on the Department's motion, the Department maintained that its previous attorney had made a mistake in approving the final judgment and did not catch that the support payments would be paid directly to the mother.  The Department also pointed out that the mother had assigned her rights to the Department by accepting public assistance.

2

The Department asserted that under section 409.2564, Florida Statutes, any order of support must require the payments to be made through the depository. The Department also suggested that it could not meet its enforcement responsibilities under Chapter 61 if the payments were made directly to the mother, as the Department would have no way of knowing whether the father was complying with the order. In response, the father raised the same arguments that he now raises in this appeal.

At the conclusion of the hearing, the trial court ruled that it would deny the Department's motion to set aside the final judgment but grant the Department's motion for redirection of payments. The trial court reasoned that Florida law required payments to be "made through the depository." The trial court further reasoned: "I'm not changing any agreement whatsoever. The amounts are not changing. The only thing that's being changed . . . is the fact that it's being paid to the depository."

Consistent with its oral pronouncement, the trial court entered an order denying the Department's motion to set aside the final judgment but granting the Department's motion for redirection of payments. The trial court ordered that all child support payments must be made through the State of Florida Disbursement Unit. This appeal ensued.

### Standard of Review

Where the modifiability of a support obligation turns on an issue of law, the standard of review is de novo. *deLabry v. Sales*, 134 So. 3d 1110, 1115 (Fla. 4th DCA 2014). Issues of statutory interpretation are also reviewed de novo. *Therlonge v. State*, 184 So. 3d 1120, 1121 (Fla. 4th DCA 2015).

### Legal Analysis

#### A. The Father's Arguments

On appeal, the father contends that the trial court erred in granting the Department's motion for redirection of payments. Specifically, the father argues that because the final judgment called for direct payments to the mother, the trial court improperly modified the final judgment by granting redirection of the payments without requiring a showing of a default in payment or a change in circumstances. The father also argues that Florida law does not require support payments to be made through the depository under the circumstances of this case.

We disagree with the father's argument that Florida law does not require support payments to be made through the depository. However, we conclude that the trial court improperly modified the final judgment without making a finding that a valid ground for modification applied.

3

*B. Section 61.13 and <u>Branscomb</u>*

Section 61.13(1)(a)2., Florida Statutes, governs a circuit court's continuing jurisdiction to modify "the amount and terms and conditions" of child support payments:

> 2. The court initially entering an order requiring one or both parents to make child support payments has continuing jurisdiction after the entry of the initial order to modify the amount and terms and conditions of the child support payments if the modification is found by the court to be in the best interests of the child; when the child reaches majority; if there is a substantial change in the circumstances of the parties; if s. 743.07(2) applies; or when a child is emancipated, marries, joins the armed services, or dies. The court initially entering a child support order has continuing jurisdiction to require the obligee to report to the court on terms prescribed by the court regarding the disposition of the child support payments.

§ 61.13(1)(a)2., Fla. Stat. (2018). The grounds for modification under this statute are stated in the disjunctive. Moreover, this court has reaffirmed the principle that a contract may not "divest the courts of their authority to modify child support, for inherent in a court's authority is the authority to modify child support—regardless of any agreement between the parties." *deLabry*, 134 So. 3d at 1116 (quoting *Guadine v. Guadine*, 474 So. 2d 1245 (Fla. 4th DCA 1985)).

Additionally, section 61.13(1)(d)3., Florida Statutes, states that an affidavit alleging a default in payment of child support is a ground for requiring that payments be made through the depository:

> 3. *For support orders payable directly to the obligee, any party, or the department in a IV-D case, may subsequently file an affidavit with the depository alleging a default in payment of child support and stating that the party wishes to require that payments be made through the depository.* The party shall provide copies of the affidavit to the court and to each other party. Fifteen days after receipt of the affidavit, the depository shall notify all parties that future payments shall be paid through the depository, except that income deduction payments shall be made to the State Disbursement Unit.

§ 61.13(1)(d)3., Fla. Stat. (2018) (emphasis added).

4

In *Florida Department of Health and Rehabilitative Services v. Branscomb*, 597 So. 2d 922 (Fla. 2d DCA 1992), the Second District addressed a factual scenario similar to that in the present case. There, the Second District held that HRS, as the subrogee of a wife who received public assistance, was not entitled to modify a final judgment of separation in order to compel the husband to make his child support payments through the county depository, absent an allegation of a change in circumstances or a default by the husband. *Id.* at 923. HRS's petition merely alleged "in standardized language" that the petitioner was "unable to enforce her entitlement to receive child support without the payments being paid through the Clerk of the Circuit Court." *Id.* Thus, there is no indication in *Branscomb* that HRS's petition alleged that modification of the method of payment was in the best interest of the child.

The separation order at issue in *Branscomb* did not require the support to be paid through the county depository. *Id.* Under the 1989 version of section 61.13(1)(d) in effect in *Branscomb*, all child support orders were required to direct payment of child support through the county depository unless the parties requested, and the court found that it was in the best interest of the child, for payments to be otherwise made. *Id.* at 923 n.1. The Second District assumed that the parties had made such a request. *Id.*

Although the Second District was unsure whether "the extensive regulation of child support that is statutorily required in a divorce is also essential when the parents are merely subject to a separation order under section 61.10," the court concluded that it had "no need to resolve this issue in this case." *Id.* Instead, the court assumed that section 61.13(1)(d) applied to the separation order, and then reasoned that HRS, which had no greater rights than the wife, was entitled to seek a change of the method of payment only if the husband defaulted:

> Assuming the requirements of section 61.13(1)(d) apply to this order entered under section 61.10, HRS has the "same rights as" Mrs. Branscomb. Once she elected not to require the support payments to be made through the depository, she was entitled to seek a change of that method only if her husband defaulted. § 61.13(1)(d) 4., Fla. Stat. (1989). HRS has not established in this case that it has greater rights in this regard than does Mrs. Branscomb.

*Id.* at 923. Finally, the court explained that "HRS did not prove to the trial court and it has not proven to this court that the separation order must be modified to fulfill any federal mandate." *Id.*

5

*C. The Trial Court Improperly Modified the Final Judgment*

Here, one of the terms of the settlement agreement, which was incorporated in the final judgment, was that the father would make child support payments "directly to the MOTHER by direct deposit to such account as she may from time to time designate in writing." The trial court appeared to reason that a mere redirection of payment was not a modification of the final judgment. We disagree and hold that the trial court's order constituted a modification of the final judgment.

We disagree with the Department's argument that because the parents' settlement agreement allowed the mother to designate the account into which the support payments would be directly deposited, the Department—as the assignee/subrogee of the mother—had the right to redesignate the depository as the new account into which the father's child support payments would be made. The Department's interpretation of the settlement agreement is inconsistent with the plain language of the agreement, which required support payments to be made "directly to the MOTHER." Because the settlement agreement did not provide for payment through the depository, the trial court's order for redirection of the child support payments constituted a modification of the final judgment.

Accordingly, we conclude that the trial court's order improperly modified the final judgment where the trial court did not find that the modification was in the best interest of the child, that there had been a substantial change in circumstances, that a default occurred, or that there was any other legal ground for modification of the terms of payment as established in the final judgment.

*D. The Department's Motion Stated a Sufficient Claim for Vacating the Final Judgment*

Although the Department's motion did not allege any legally sufficient ground for modification of the judgment (such as that modification was in the best interest of the child), the Department's motion stated a sufficient claim for vacating the final judgment.[1]

Florida Family Law Rule of Procedure 12.540(b)(1) allows the court to relieve a party from a final judgment on the ground of "mistake,

---

[1] The provision for the father to make support payments directly to the mother was part of the settlement agreement approved in the final judgment. Without that provision, the father may not have agreed to other aspects of the settlement agreement. Thus, if the trial court were to vacate the final judgment (as opposed to modifying it), the father would have an opportunity to renegotiate the settlement agreement with the mother.

inadvertence, surprise, or excusable neglect." Here, the Department alleged that it simply made a mistake when it approved a final judgment that was inconsistent with Florida law. Thus, the Department's motion stated a facially sufficient claim for vacating the final judgment.

As will be explained below, by allowing the father to make payments directly to the mother in a Title IV-D case, the final judgment was inconsistent with Florida law.

### E. Florida Law Requires Child Support Payments in Title IV-D Cases Involving the Department to be Made to the Depository

Current Florida law mandates that child support payments be made through the depository in Title IV-D cases.

Although *Branscomb* bears some factual similarities to this case, we find that this case is distinguishable from *Branscomb* in one key respect. *Branscomb* was decided under the 1989 statutory scheme. In *Branscomb*, there was no showing that child support payments had to be made through the depository in Title IV-D cases to fulfill any federal mandate. However, the relevant statutory law has changed since *Branscomb* was decided.

To qualify for certain federal funds, a State "must certify that it will operate a child support enforcement program that conforms with the numerous requirements set forth in Title IV–D of the Social Security Act." *Blessing v. Freestone*, 520 U.S. 329, 333 (1997).

Title IV-D of the Social Security Act requires a State plan for child support to operate a State Disbursement Unit by October 1, 1998. 42 U.S.C. § 654(27) (2018). Under federal law, a Title IV-D agency must establish and operate a State Disbursement Unit for the collection and disbursement of payments under support orders in all cases being enforced under the State IV-D plan. 45 C.F.R. § 302.32(a)(1).

Consistent with federal requirements, Florida law provides that the State Disbursement Unit "shall be responsible for the collection and disbursement of payments" in "[a]ll support cases enforced by the department pursuant to Title IV-D of the Social Security Act." § 61.1824(1)(a), Fla. Stat. (2018).

Florida law also states that, by accepting public assistance on behalf of a child, a recipient "assigns to the department any right, title, and interest to support the recipient may be owed." § 409.2561(2)(a), Fla. Stat. (2018). The Department is then subrogated to the right of the child or the child's

custodian "to prosecute or maintain any support action or action to determine paternity or execute any legal, equitable, or administrative remedy existing under the laws of the state to obtain reimbursement." § 409.2561(3), Fla. Stat. (2018).

Actions for support are governed by section 409.2564, Florida Statutes, which states in relevant part:

> (1) *In each case in which regular support payments are not being made as provided herein,* the department shall institute, within 30 days after determination of the obligor's reasonable ability to pay, action as is necessary to secure the obligor's payment of current support, any arrearage that may have accrued under an existing order of support, and, if a parenting time plan was not incorporated into the existing order of support, include either a signed, agreed-upon parenting time plan or a signed Title IV-D Standard Parenting Time Plan, if appropriate. . . .
>
> (2) The order for support entered pursuant to an action instituted by the department under subsection (1) shall require that the support payments be made periodically to the department through the depository. . . .
>
> * * *
>
> (4) Whenever the Department of Revenue has undertaken an action for enforcement of support, the Department of Revenue may enter into an agreement with the obligor for the entry of a judgment determining paternity, if applicable, and for periodic child support payments based on the child support guidelines schedule in s. 61.30. . . .
>
> (5) Whenever the department has undertaken an action to determine paternity, to establish an obligation of support, or to enforce or modify an obligation of support, the department shall be a party to the action only for those purposes allowed under Title IV-D of the Social Security Act. . . .
>
> * * *
>
> (8) *In cases in which support is subject to an assignment* as provided under 45 C.F.R. s. 301.1, *the department shall,* upon providing notice to the obligor and obligee, *direct the obligor or other payor to change the payee to the appropriate depository.*

8

§ 409.2564, Fla. Stat. (2018) (emphasis added).

Notwithstanding the foregoing statutory provisions, section 61.13(1)(d) contemplates that support orders may be payable directly to the obligee even in Title IV-D cases:

> 2. If both parties request and the court finds that it is in the best interest of the child, support payments need not be subject to immediate income deduction. *Support orders that are not subject to immediate income deduction may be directed through the depository under s. 61.181 or made payable directly to the obligee.* Payments made by immediate income deduction shall be made to the State Disbursement Unit. The court shall provide a copy of the order to the depository.

> 3. *For support orders payable directly to the obligee, any party, or the department in a IV-D case, may subsequently file an affidavit with the depository alleging a default in payment of child support and stating that the party wishes to require that payments be made through the depository.* The party shall provide copies of the affidavit to the court and to each other party. Fifteen days after receipt of the affidavit, the depository shall notify all parties that future payments shall be paid through the depository, except that income deduction payments shall be made to the State Disbursement Unit.

§ 61.13(1)(d), Fla. Stat. (2018) (emphasis added).

In our view, the final judgment in this case did not conform with federal and state requirements, as it allowed the parents in a Title IV-D case to agree to have the support payments bypass the depository.

Beginning in 1998, both federal law and Florida law have required the operation of a State Disbursement Unit to be responsible for the collection and disbursement of payments for all support cases enforced by the Department pursuant to Title IV-D of the Social Security Act. *See* 45 C.F.R. § 302.32 (2018); § 61.1824(1), Fla. Stat. (2018); Ch. 98-397, § 43, Laws of Fla. (creating section 61.1824, Florida Statutes). Thus, under current law, unlike in *Branscomb*, the direct payment of child support to the mother in this Title IV-D case violates federal and state statutory requirements.

Indeed, section 409.2564(8) states that "[i]n cases in which support is subject to an assignment . . . the department shall . . . direct the obligor

9

or other payor to change the payee to the appropriate depository." § 409.2564(8), Fla. Stat. (2018). Notably, this requirement was first enacted in 1997, which was after *Branscomb* was decided. *See* Ch. 97-170, § 48, Laws of Fla. While the father argues that section 409.2564 applies only to situations in which the obligor fails to make support payments, his argument rests entirely on section 409.2564(1).

Section 409.2564(1) requires the Department to bring an action for support in each case in which regular support payments are not being made. However, section 409.2564(8) is not limited to cases where the Department instituted an action under subsection (1). Nothing in the plain language of section 409.2564(8) would preclude this subsection from applying to a paternity case in which the Department intervened to enforce an obligation of support under Title IV-D.

Furthermore, although section 61.13 still contains language which assumes that support orders could be payable directly to the obligee even in Title IV-D cases, this language is inconsistent with the requirements of section 61.1824. Because section 61.1824 was enacted more recently than section 61.13, section 61.1824 controls over any conflicting language in section 61.13.[2] *See Palm Beach Cty. Canvassing Bd. v. Harris*, 772 So. 2d 1273, 1287 (Fla. 2000) (explaining that "when two statutes are in conflict, the more recently enacted statute controls the older statute").

Moreover, because section 61.1824 is the more specific statute regarding the responsibilities of the State Disbursement Unit, it controls over the more general language in section 61.13. *See McKendry v. State*, 641 So. 2d 45, 46 (Fla. 1994) (explaining that "a specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms").

### *Conclusion*

In sum, we conclude that the trial court erred by entering a post-judgment order directing the father to make child support payments through the depository, as this constituted a modification of the final judgment without a finding that the modification was in the best interest of the child, there was a substantial change in circumstances, or any other legal ground for modification applied.

Nonetheless, we note that the Department's motion raised a colorable claim for relief from judgment under Florida Family Law Rule of Procedure 12.540(b)(1) on the ground of "mistake, inadvertence, surprise, or

---

[2] Although section 61.13 has been amended more recently than section 61.1824, the conflict between the statutes can be traced back to language in section 61.13 that predated the enactment of section 61.1824.

excusable neglect." The Department's allegations, if proven at an evidentiary hearing, would show that the Department made a mistake when it approved the final judgment, which contained a provision inconsistent with the requirements of Florida law. The Department's allegations stated a valid claim for vacating the final judgment. Thus, the trial court should not have summarily denied the Department's request to set aside the final judgment.[3]

We reverse the order on appeal and remand for further proceedings consistent with this opinion. On remand, we direct the trial court to reconsider the Department's request to set aside the final judgment pursuant to rule 12.540. Should the trial court grant that motion, then the judgment will be vacated, and all the parties may again agree to a settlement or they may litigate the issues of support. At that time, the Department can insist on payment through the depository if there continue to be payments due to the State, and the father can modify his offers to the mother accordingly.

*Reversed and Remanded.*

WARNER, J., concurs specially with opinion.
CONNER, J., dissents with opinion.

WARNER, J., concurring specially.

Although the trial court on paper denied the motion for relief pursuant to rule 12.540(b), it in essence granted the motion for relief when it modified the final judgment to require child support payments to the depository. I agree with the majority that the redirection of payments improperly modified the stipulated final judgment. I also concur in the majority that there were grounds alleged for the court to grant relief pursuant to rule 12.540(b). If upon our reversal and remand the court grants the motion, finding excusable neglect in the Department's failure to object to the agreed settlement because it did not require child support payments through the depository, then the relief is to *vacate* the final judgment which was based upon an agreed settlement.

---

[3] It appears that the trial court's denial of the Department's request to set aside the final judgment may have been based, at least in part, on the fact that the trial court decided it would grant the Department's alternative request for redirection of payments. Thus, because we are reversing the order requiring redirection of payments, the trial court should reconsider its ruling on the Department's request to set aside the final judgment.

11

The parties bargained for certain benefits. While the payment of support through the depository may not seem significant, it is apparent that it is very significant to appellant. He agreed to pay in support nearly twice what was ordered in an earlier administrative proceeding with the Department of Revenue as well as other living expenses of the mother. (Because of this, the mother may not even be receiving state support.) The appellant may not be willing to pay the increased amount and expenses he also agreed to undertake if he is required to pay through the registry. He is entitled to withdraw his agreement if he is compelled to accept a term to which he did not agree. A court should not remake a settlement agreement entered between the parties. *See Kirsch v. Kirsch*, 933 So. 2d 623, 626 (Fla, 4th DCA 2008) (quoting *Ballantyne v. Ballantyne*, 666 So. 2d 957, 958 (Fla. 1st DCA 1996)). Had he known of the Department's insistence of payment through the depository, he may have negotiated different terms.

CONNER, J., dissenting.

I respectfully dissent. Although the majority and concurring opinion offer substantial reasons for their positions, which comport with a number of legal principles, my disagreement revolves around what I contend is the ultimate issue: What is in the best interest of the child?

Both the majority and concurring opinions concede that section 61.13(1)(a)2., Florida Statutes (2018), clearly provides that the trial court has continuing jurisdiction "to modify the amount and terms and conditions of the child support payments *if the modification is found by the court to be in the best interests of the child.*" (emphasis added). Although it is true that the trial court did not recite the magic words "best interest of the child" in its order, it is clear from the comments by the trial court in the transcript of the hearing that such was its conclusion.

It is significant that by accepting public assistance on behalf of a child, a "recipient assigns to the department any right, title, and interest to support the recipient may be owed." § 409.2561(2)(a), Fla. Stat. (2018). As the majority points out, in Title IV-D situations, the Department is subrogated to the right of the child or the child's custodian "to prosecute or maintain any support action or action to determine paternity or execute any legal, equitable, or administrative remedy existing under the laws of the state to obtain reimbursement." § 409.2561(3), Fla. Stat. (2018).

It is also significant that to comply with federal statutes governing Title IV-D funds given to states, Florida Statutes generally require that child support payments be made through a central depository in Title IV-D cases. *See, e.g.,* § 61.13(1)(d), Fla. Stat. (2018). The obvious logic for the

12

requirement is to provide a mechanism to better monitor and prove whether child support is being paid as ordered. It is also obviously logical that a system designed to assure child support is paid is in the best interest of a child.

The record indicates that the father negotiated to pay a higher amount of child support than what was ordered by the administrative proceeding. The majority and concurring opinion take the position that the father may not have agreed to pay a higher amount of support if the mother sought in the negotiations to have child support paid through a central depository. Thus, in the view of the majority and concurring opinions, because the trial court was without authority to redirect the child support payments (because it improperly modified the support agreement), the father is now free to completely withdraw from his negotiated support agreement.

In my opinion, the majority and concurring opinions do not give sufficient consideration of the child's best interests. I am hard pressed to understand how it is in the best interest of the child to allow the father to withdraw from his agreement, when statutory law mandates that child support be paid through a central depository. I also have difficulty understanding why a father with good intentions would negotiate to pay a substantially higher amount of child support *only* if he does not have to pay child support through a central depository. I suppose the father may have been concerned about delay in the receipt of money by the mother if the payment goes through a central depository. But surely, the avoidance of some brief delay in receipt of the money by the mother does not outweigh that payment through the system designed for monitoring whether the payment was made is more in the child's best interest. Arguably, it may be in the *father's* best interest not to pay child support through a central depository, but absent a repeated significant delay in the receipt of money by the mother, it is implausible that payment of child support paid through a central depository is not in the best interest of a child.

Because I contend the trial court was protecting the best interest of the child by complying with statutory provisions designed for such purpose, and because trial courts, in addition to statutory provisions, have the inherent authority to protect children, I respectfully dissent and would affirm the trial court order. Even if I were to agree with a reversal and a remand, I would limit any relief granted, as possible under Florida Family Law Rule of Procedure 12.540(b)(1), to only allow the father to show why payment through the central depository is not in the best interest of the child, rather than allow the father to withdraw completely from his negotiated agreement.

*       *       *